JAMES L. GANDY, PLAINTIFF IN ERROR, v. THE STATE OF NEBRASKA, DEFENDANT IN ERROR.

1.  Criminal Law: DEPOSITIONS IN CRIMINAL CASES.  Where depositions of certain witnesses on behalf of the defendant in a criminal case are taken by a commission appointed by a judge of the district court, such judge has the power under Sec. 460 of the criminal code to prescribe the manner of taking such depositions, the usual mode being by interrogatories and cross-interrogatories, but this will not prevent the attorney of either or both parties from appearing and further examining or cross-examining the witnesses.

2. ———: MISCONDUCT OF PROSECUTING ATTORNEY. A prosecuting officer has no right to go to witnesses of a party accused of crime and endeavor to dissuade them from appearing and testifying in the case; nor will his assumption that such witnesses are unreliable, and may testify falsely, justify him in such conduct. The question of the credibility of the witnesses is one for the jury, and not for the prosecuting officer.

3. ———: INFORMATION: WITNESSES. The names of witnesses upon which the state relies to prove the charge against one accused of crime should be endorsed on the information at as early a day as practicable after the discovery of such witnesses, and in all cases before the day set for the trial of the case.

4. Trial: VERDICT: CONSIDERATION OF CASE BY JURY. Where a bailiff remains in a room with a jury during the time such jury are considering their verdict, it is sufficient to vitiate the verdict. The jury should have opportunity for private and confidential discussion. They should be permitted to comment with freedom upon the motives and conduct of parties and witnesses, and without restraint to express their views, which perhaps they could not publicly express without making enemies. The presence of an officer, therefore, for any considerable portion of the time, is an intrusion on this privacy, from which an injury to the accused will be presumed.

ERROR to the district court for Pawnee county. Tried below before CHAPMAN, J.

*E. W. Thomas, Humphrey & Lindsay,* and *John L. Webster,* for plaintiff in error, on depositions, cited: *Hollister v. Hollister,* 6 Penn. State, 449. *Stagg v. Pomeroy,* 3 La. Ann., 16. *Walker v. Barron,* 4 Minn., 178. Misconduct of prosecuting attorney: Maxwell Crim. Proc., 570. *People v. Quick,* 58 Mich., 322. Presence of bailiff in jury room: *Rickard v. State,* 74 Ind., 275. Maxwell Crim. Proc., 614. *Koons v. State,* 36 Ohio State, 195. *People v. Knapp,* 3 N. W. R., 927.

*William Leese, Attorney General, Edwin Falloon, Frank Martin,* and *E. A. Tucker,* for defendant in error, on endorsement of names of witnesses on information, cited:

*State v. Huckins*, 36 N. W. Rep., 527. Misconduct of prosecuting attorney and taking of depositions: Crim. Code, Sec. 462. Civil Code, Sec. 378. Maxwell Crim. Proc., 562, 563, 566. Presence of bailiff in jury room: Hayne New Trials, Sec. 69. Hilliard New Trials, Secs. 12, 18, and 12a. *Gainey v. People*, 97 Ill., 271. *Crockett v. State*, 8 N. W. R., 591. *Ned v. State*, 33 Miss., 364. *Collier v. State*, 20 Ark., 36. 1 Bishop Crim. Proc., Sec 998a.

MAXWELL, J.

The plaintiff in error was charged in an information for perjury in the district court of Richardson county, and on the trial was found guilty, and sentenced to imprisonment in the penitentiary for the period of five years. The case was brought on error to this court, and the judgment reversed. A change of venue was had to Pawnee county, the county seat of which is but a few miles from that of Richardson county, and a trial being about to take place the plaintiff filed an affidavit of prejudice against Judge Appelget, whereupon the cause was continued and afterwards a trial was had before Judge Chapman, of the second district, and a verdict of guilty rendered, and the plaintiff sentenced to imprisonment in the penitentiary. He now presents error to this court.

A large number of errors are assigned, but four of which it will be necessary to notice. As there must be a new trial, we will not examine the evidence; nor as to the competency of one Hutton, called as a juror; nor the instructions; as the error, if any, probably will be corrected in the next trial. It may be said generally that on the trial the plaintiff in error, so far as the court is concerned, was treated with fairness and consideration, and has no cause of complaint.

The first error assigned is, the misconduct of the county

attorney, who prosecuted for the state, in cross-examining certain witnesses whose testimony was taken at Oberlin, Kansas. These depositions were taken under a commission appointed under the provisions of section 460 of the criminal code.

The ordinary course for the judge in appointing the commission is to direct the mode of examination of the witnesses, which usually is by interrogatories and cross-interrogatories. Where, however, either or both parties appear by attorney and further examine and cross-examine the witnesses, it will not be ground of error.

2. Misconduct of the county attorney and others in intimidating witnesses. In support of this charge a number of affidavits were filed, which are now before us, and are as follows:

"I, L. C. Thomas, being first duly sworn, say I reside in Richardson county, Neb. About a week ago last Monday I was subpœnaed on behalf of the defendant to appear here at the district court of Pawnee county, Nebraska, on April 23, 1888, and I did appear in obedience to said subpœna. This morning, during the progress of the trial of the above case, and before the witnesses on behalf of the defendant had been called to testify, Dr. B. Bell Andrews, a witness in the cause on behalf of the state, went to my room in the hotel in Pawnee City, where I was stopping, and told me I had better not appear at said trial as a witness for the defendant, J. L. Gandy, and if I did they would raise a mob in Humboldt, Nebraska, and come to where I live and mob me. This morning, in Pawnee City, before the witnesses on behalf of the defendant had been called to testify, Edwin Falloon, the county attorney of Richardson county, Nebraska, who was prosecuting said case, told me I had better not appear to testify on behalf of the defendant in said case—that if I did it would not be well for me. By the statements made to me by said Andrews and Falloon, I was put in fear. I was not placed on the witness stand, and did not testify in said cause."

"J. L. Calvert, being first duly sworn, on his oath says, that he is a resident of Oberlin, Decatur county, Kansas, and while said depositions were being taken one Edwin Falloon, the prosecuting attorney in this action, and county attorney of Richardson county, Nebraska, met affiant in the hall near the room in which such depositions were being taken, and asked affiant if he was going to be a witness in the case, and on affiant informing him that such would not be the case at that time, said Falloon told affiant he had better not testify in the case; said that affiant was yet a young man, and that if he testified in favor of J. L. Gandy, and against the state, he would be testifying against a dozen good men, and would ruin his (affiant's) chances in life, and affiant further states that he did not testify at that time, nor was his evidence taken."

"Leonard Hutchins, being first duly sworn, deposes and says, that he is one of the witnesses in the defendant's behalf in the above entitled case; that on the 25th day of April, 1888, while affiant was walking in the streets of Pawnee City, and before affiant had testified in such case, one B. Bell Andrews, a witness for the state, in the hearing of affiant, and directing his remarks at affiant, said, 'Damn him, there's a man come here to swear against me, and if he does so I'll have him arrested.' And after affiant had testified, and as he was leaving the witness stand in the court-room where such trial was taking place, the said Andrews remarked, "There goes a man who swore to a damned lie.'"

"Geo. J. Bentley, being duly sworn, on his oath says: I reside in Oberlin, Decatur county, Kansas; that on or about the 3d day of April one Edwin Falloon, county attorney for Richardson county, Nebraska, approached this affiant while in Oberlin, Kansas, and in the law office of G. Webb Bertram, saying he, Falloon, would like to talk with me. We repaired to the private room of said office, when and where Mr. Falloon advised me not to testify in the case, as it would not be to my interest to do so."

On behalf of the state the following affidavits were filed:

"B. Bell Andrews, who being first duly sworn, deposes and says, that he is the Andrews mentioned in the affidavits of L. C. Thomas and Leonard Hutchins; that the affidavits of said Thomas and Hutchins are false in every respect, as far as the affiant is concerned; that affiant never made any statement of any kind to said Thomas or Hutchins about this case, nor did this affiant ever attempt to influence any witness in this case to testify or not to testify for or against the defendant, nor is the said Hutchins and this affiant on speaking terms."

"Edwin Falloon, who being by me first duly sworn, deposes and says, that he is county attorney of Richardson county, Nebraska, and the Falloon mentioned in the affidavit of L. C. Thomas, J. L. Calvert, and Geo. J. Bentley; that affiant says that he never tried to prevent said Thomas, Calvert, or Bentley from appearing as witnesses in this action; that affiant has not seen said L. C. Thomas for several weeks, and never had any conversation with him about this case at any time or place. And affiant further says that he had a conversation with J. L. Calvert, in Oberlin, Kansas, about this case, in which he, Calvert, told him that Thayer and Gandy called for lease blanks in the office of Calvert & Wallace, at the time the lease in question was alleged to have been executed; that affiant replied to said Calvert that it seemed strange that this conversation took place, because nothing of the kind was given in evidence upon the former trial; that affiant told said Calvert that he believed that Gandy was making a victim out of him; that what induced affiant to approach and talk to said Calvert about this case was that G. Webb Bertram, the notary before whom the depositions were taken, told affiant that said Calvert had tried to hire said Bertram to not take said depositions, but be away and let W. A. Wilson, the person mentioned in the commission

attached to said depositions, take them. And affiant further states that he asked Calvert to testify in this case at Oberlin, Kansas, before said Bertram, but that said Calvert refused to do so; that affiant never at any time or place tried or asked the said Calvert, Thomas, or Bentley to not appear as a witness on behalf of the defendant, James L. Gandy, nor has this affiant tried or attempted to do anything improper in this case, or anything unbecoming an attorney or officer of this or any court. Nor has this affiant at any time or place tried to hire any witness to appear or not to appear for or against the state in this case."

Mr. Falloon was also examined as a witness, and testified on cross-examination that he went to Oberlin, Kansas, to appear as attorney for the state in taking depositions; that he spoke to at least two of the witnesses of the plaintiff in error, and sought to dissuade them from testifying. He also seems to have made a number of assertions against the plaintiff in error. The importance of the testimony of the witnesses whose depositions were sought will be understood when the charge of perjury relates to an alleged *lease* made by Thayer to Gandy, at Oberlin, Kansas, and some of the witnesses apparently would have testified that Gandy and Thayer, at the time the alleged lease was said to have been prepared, procured a blank lease for the purpose of having it filled up. This testimony was very material on behalf of the plaintiff in error, as tending to show that Thayer had actually executed a lease to the plaintiff in error. That some instrument was executed by Thayer to the plaintiff in error at that time is clearly shown, and the alleged perjury is based upon the allegation that the instrument was not a lease.

Section 37 of the criminal code provides: "That if any person or persons shall, corruptly, or by threats, or force, endeavor to influence, intimidate, or impede any juror, witness, or officer, in any court of this state, in the dis-

charge of his duty, or shall corruptly, or by threats or force, obstruct or impede, or endeavor to obstruct or impede, the due administration of justice therein, every person or persons so offending shall be punished by fine not exceeding one hundred dollars, or by imprisonment not exceeding twenty days, or both."

The offense was punishable also at common law. A prosecuting officer has no more right to attempt to dissuade the witnesses of the party accused of crime from testifying than he would have to induce them to leave the state. It will not do to say as an excuse that they would have testified to what was untrue. The jury is to determine the credibility of the witnesses, and a proper cross-examination of a witness will almost invariably test the truth of his statements. In any event a prosecuting officer cannot be allowed to resort to unprofessional methods to prevent witnesses from giving testimony. No doubt the attorney in this instance deemed what he did to be his duty under the circumstances, hence his zeal in the case, and perhaps did not view the transaction as dispassionately as but for such zeal he would have done.

It will be observed that Mr. Andrews in his affidavit fails specifically to deny that he used the language imputed to him by the witnesses. He swears to conclusions. All that he states may be true, and still the affidavits be undenied.

3. Objection is made that immediately preceding the trial the prosecution asked leave to endorse on the information the names of twenty-three witnesses, residents of Richardson county. But six of these witnesses were called. Afterwards the prosecution asked and obtained leave to endorse the names of two additional witnesses. A continuance was thereupon asked by the plaintiff in error, which was denied, and this is now assigned for error. A prosecuting officer who knows of the existence of additional witnesses whose names he desires to endorse on the information

should make his application at as early a day as may be convenient, certainly before the day of trial, otherwise if the accused is taken by surprise it may be ground for a new trial. The reason for the rule is very clearly stated by Judge COBB in *Parkes v. State*, 20 Nebraska, 517, 518, as.follows: " It is an innovation which had been often suggested before it was adopted. With its undoubted advantages it has been objected to as placing too much power in the hands of the prosecutor. Probably foreseeing this objection, the framers of the law sought to throw around the rights of the accused, under this method of prosecution, every reasonable protection. Under the system of prosecution by indictment, the grand jury was, in a sense, the accuser of every person brought to trial for a crime. So here, where the services of a grand jury are dispensed with, while the responsibility of the prosecution rests in some sense upon the shoulders of the prosecuting attorney, there is certainly some reason why there should be open to the accused some source of information as to the identity of the persons upon whose oath his conviction and punishment is about to be claimed at the bar of justice."

In this case, however, the testimony of the witnesses called does not appear to have been very material, hence it was error without prejudice.

4. While the jury were considering their verdict, the bailiff having them in charge remained in the room with them. This is now assigned for error. The question here presented was before the supreme court of Michigan in *People v. Knapp*, 42 Mich., 267, *S. C.*, 3 N. W. R., 927. Judge Cooley, in discussing the question, says : " That when the jury retire from the presence of the court, it is in order that they may have opportunity for private and confidential discussion, and the necessity for this is assumed in every case, and the jury sent out as of course, where they do not notify the court that it is not needful. The presence of a single other person in the room is an intru-

sion upon this privacy and confidence, and tends to defeat the purpose for which they are sent out; and if one may be present, why not several? Why may not the officer bring in his friends to listen to what must often be interesting discussions, and then defend his conduct on proof that they did nothing but listen? But the circumstances of particular cases may make it specially mischievous. In their private deliberations the jury are likely to have occasion to comment with freedom upon the conduct and motives of parties and witnesses, and to express views and beliefs that they could not express publicly without making bitter enemies. Now the law provides no process for ascertaining whether the officer is indifferent and without prejudice or favor as between the parties; and as it is admitted he has no business in the room, it may turn out that he goes there because of his bias, and in order that he may report to a friendly party what may have been said to his prejudice, or that he may protect him against unfavorable comment through the unwillingness of jurors to criticise freely the conduct and motives of one person in the presence of another who is his known friend. Or the officer may be present with a similar purpose to protect a witness, whose testimony was likely to be criticised and condemned by some of the jurors.

"Suppose some member of the officer's family had given important evidence in the case. What reason can there be for expecting that this evidence would be freely canvassed and carefully considered in his presence? But the case may touch him still more nearly. In criminal cases especially, officers frequently become important witnesses, and no one can have had much to do with such trials without feeling that unusual care and caution is necessary in the examination and sifting of their evidence, in order to guard against a natural tendency to allow the facts to be colored by their prepossessions, especially in the case of those they have themselves arrested or accused. If, under

.such circumstances, the officer may be present when his own evidence is to receive its final sifting, the accused may well suspect he is tried and judged unfairly. Nor will it do to leave the case for subsequent investigation in order to ascertain whether the suspicion is well founded. The time of the court cannot be taken up with such inquiries; if it could be the result would not always remove the suspicion. The only proper and just course is to insist on a rigorous observance of the proper practice, in order to prevent all occasion for injurious suspicions." See also, *Rickard v. State*, 74 Ind., 275. *McClary v. State*, 75 Ind., 261. *Cole v. Swan*, 4 G. Green, Ia., 32. *State v. Cartwright*, 20 W. Va., 32. *State v. Robinson*, 20 W. Va., 743. Maxwell's Criminal Practice, 644. *State v. Snyder*, 20 Kas., 306. *Hare v. State*, 4 How. (Miss.), 187. *Slaughter v. State*, 24 Texas, 410. *Hoberg v State*, 3 Minn., 181.

In *State v. Bailey*, 32 Kan., 84, it is said in substance that prejudice must be shown.

' The supreme court of Wisconsin refused to follow *People v. Knapp*, and like cases, basing its decision upon the presumption that the bailiff was duly sworn. The supreme court of Illinois also hold that it is not of itself reversible error for a bailiff to remain in the jury room with the jury. We approve of the doctrine stated in *People v. Knapp*, and like cases, and adopt it as the law of this state. The intrusion of a visitor into the consultation room of this court while a case is under consideration by the judges at once suspends all discussion in regard to the case until the visitor leaves. He may be known to be a man of the utmost honor and integrity, who would not communicate any matter heard by him in such room, yet during the presence of such visitor all discussion in regard to the case under consideration ceases. This, too, although the judges are trained to self-reliance and independence of thought. How much more necessity, therefore, of preventing the intrusion of a bailiff in the jury room, where some of the

jurors presumably have had little or no experience as jury-men, perhaps may be timid in the expression of opinions, slow in recalling the evidence, or unable for a time to har-monize it. It thus becomes important that the discussion of the evidence among the members of the jury should be free and untrameled. It is the policy of the law that the verdict of every jury shall be reached by free and deliber-ate consultation, without bias or prejudice, and be based upon the evidence. The evidence is to be carefully weighed, the instructions to the court considered, and a conclusion reached which shall satisfy each member of the jury. This can only be had by preventing an intrusion for any considerable time by the bailiff, or others, while the jury are considering their verdict.

In the brief of the county attorney and his associates, we find at the close a considerable statement designed to show to the court some of the transactions of the plaintiff in error, from which the inference is sought to be drawn that he is a bad man. As the statements referred to are not a part of the record, they have not been considered, nor can they have any weight with the court. And it may as well be said that such statements should not be inserted in a brief. The plaintiff in error may be a good or bad man, we know not which. He is to be tried, however, for a specific offense, and not upon general charges. On the trial of such offense he is entitled to a fair jury, to wit-nesses called by him to appear and testify in his behalf, and to a careful consideration of his case by the jury, and that the verdict shall be the result of their joint deliber-ation.

During the argument of the case the attorney for the plaintiff in error stated that many of the witnesses whose names were endorsed on the information on the morning of the day of trial were personal enemies of the plaintiff in error, who were not designed to be called to testify, but to sit on the front seats in the court room and applaud when

a point was made against the plaintiff in error; and that the judge had some difficulty in restraining them. The only thing which we find in the record tending in any degree to support this charge is the fact that seventeen of the persons whose names were so endorsed were not called as witnesses. If the facts were as stated, the attorney for the plaintiff in error should have called the attention of the trial court to that fact, and support the charge by affidavit. The charge is a serious one, and should not be made unless there is abundant evidence to sustain it, but the charge being once established it would be the duty of the trial court to set aside the verdict. The criminal law is to be used as a means to punish the guilty, and not to gratify the malice of the enemies of the accused.

The judgment of the district court is reversed, and the cause remanded for further proceedings.

REVERSED AND REMANDED.

COBB, J., concurs.

REESE, CH. J., dissenting.

Not being able to agree with the majority of the court as to the decision in this case, I will very briefly state my reasons therefor.

*First,* Section 579 of the criminal code provides, in substance, that the prosecuting attorney shall endorse upon an information the names of the witnesses known to him at the time of filing it, and at such time before the trial of any cause as the court may, by rule or otherwise, prescribe, he shall endorse thereon the names of such other witnesses as shall be known to him.

I find nothing in the law requiring the prosecuting officer to endorse the names of additional witnesses upon an information "before the day set for the trial of the case," and I know of no authority to inject those words into the statute.

*Second,* While it is possible that the county attorney ·exceeded the strict rules of propriety in conversing with the witnesses or persons named in the opinion of the majority, yet I. am wholly unable to find any evidence of prejudice resulting to plaintiff in error. There is no intimation in the evidence of either Thomas, Calvert, Hutchins, or Bentley, that the remarks made intimidated them, ·or that any part of their testimony on behalf of plaintiff in error was suppressed thereby. The record shows that all, with the exception of Thomas, were placed upon the witness stand, and testified, and there is nothing in his affidavit which shows that his failure to testify was in any degree owing to fear or intimidation. Assuming, therefore, that all that he has testified to in his affidavit is true, I cannot see why a new trial should be granted therefor, in the absence of a showing of prejudice. Again, every ·essential averment of the affidavits referred to is contradicted by the affidavits produced by the state. The county .attorney makes oath that he never had any conversation with Thomas about the case, at any time or place; that he never tried to prevent the witnesses from appearing and testifying on the part of the defense; that he at one time, at Oberlin, Kansas, advised Calvert that he was· being made a victim of, but did not try to prevent him from testifying. It seems to me a new trial should not .be granted for what B. Bell Andrews may have said to other witnesses, without some showing that plaintiff in ·error suffered thereby. There is no such showing. It often occurs that a witness, whether directly interested in the trial or not, becomes a partisan in favor of the side by which he is called, and indulges in unbecoming and even profane language towards those called by the opposite party, but I think I have never heard of a case where a new trial was granted for such conduct in the absence of .a clear showing of prejudice. These questions of fact were all submitted to the trial court upon the motion for

a new trial, upon affidavits, in which there was a sharp conflict. I do not believe that the decision of the court thereon can be said to be so manifestly against the weight of evidence as to require a reversal of its decision thereon.

*Third,* Section 484 of the criminal code provides, in substance, that a trial jury while deliberating upon their verdict must be kept together, in charge of an officer, until they agree upon a verdict or are discharged by the court. The officer having them in charge shall not suffer any communication to be made to them, or make any himself, except to ask them whether they have agreed upon a verdict. Nor shall he communicate to any one, before the return of the verdict, any matter in relation to the state of their deliberations.

I am unable to find anything in the statutes requiring the absence of a bailiff from the jury room during the time of the deliberations of the jury. I grant that it would be entirely proper for the district court to forbid the presence of a bailiff during the deliberations of the jury, and in case of a failure on the part of the bailiff to obey the direction of the court in that behalf, to punish him for contempt. But to say that in the absence of any such direction, and in the absence of a statutory provision requiring it, that the presence of the bailiff would be sufficient to vitiate the verdict of the jury, not only in the absence of a showing of prejudice, but in a case like this, where it is clearly and positively shown that, during the deliberation of the jury, nothing was said by the bailiff to any of the jurors, nor by any of the jurors to the bailiff, concerning the subject of the deliberations, is going beyond the provisions of the law and the intention of the lawmaker.