STATE OF NEBRASKA, APPELLEE, V. BOOKER
LEON ROBINSON, APPELLANT.

255 N. W. 2d 835

Filed July 6, 1977. No. 41063.

T. Clement Gaughan, Richard L. Goos, and Paul M. Conley, for appellant.

Paul L. Douglas, Attorney General, and Chauncey C. Sheldon, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, CLINTON, BRODKEY, and WHITE, JJ.

WHITE, C. THOMAS, J.

The defendant appeals from a conviction of second degree murder. He assigns as error: The trial court refused to suppress certain statements of the defendant obtained while he was in custody; a mistrial should have been granted since several jurors overheard a conversation questioning the credibility of a State's witness; and finally, the presentence investigation contained materials outside the scope of that allowed by section 29-2261 (3), R. R. S. 1943.

On February 2, 1976, at about 6 p.m., the defendant shot and killed Archie Robinson in a parking lot in Lincoln. The shooting was the result of an argument over a marijuana swindle. The defendant used a handgun which he had purchased earlier that day. Immediately after the shooting, the defendant left the scene on foot. He traveled several blocks to a bar where he called a cab. When the cab arrived,

defendant instructed the driver to go to the residence of Ricky Barnes, a friend of the defendant. While there, the defendant disposed of the handgun in a nearby garage. Subsequently, the defendant and Barnes got in the cab and instructed the driver to take them to Omaha. The cab was intercepted by the Nebraska State Patrol at a filling station in Sarpy County. The defendant was placed under arrest, read the Miranda warnings, and taken to the Sarpy County jail.

At approximately 11:20 p.m., Officer Ideen of the Lincoln police department entered the defendant's cell. Ideen advised the defendant that he would like to talk with him about the incident which had happened in Lincoln, the incident for which the defendant had been arrested. Ideen also told the defendant that he would advise him of his rights. The defendant replied that he did not want to talk about the incident there but would talk about it in Lincoln. Ideen then chatted briefly with the defendant and began to leave the room. As Ideen was on his way out, the defendant asked: " 'The dude died at the hospital, huh?' " Ideen answered that the victim had died.

Ideen then called Inspector LaPage who was in Lincoln and, at about 11:30 p.m., reentered the defendant's cell. Ideen advised that the police were concerned about the location of the weapon and that he would like to question the defendant as to its location. The Miranda rights card was then read to the defendant. After the defendant was asked if he waived the services of a lawyer, he stated that he did not want to talk about it. Ideen then stopped the questioning of the defendant.

At about 12:15 a.m., the defendant was transported back to Lincoln. Upon arrival at the Lincoln City-County jail, the defendant was met by Lt. Maxey of the Lincoln police. Maxey informed the defendant that he and the county attorney would like to talk

with him. Robinson answered, "Okay." At about 1:45 a.m. on February 3, 1976, the defendant was taken to the county attorney's office. The Miranda rights were again read to the defendant. The defendant admitted the shooting of Archie Robinson. The interview ended at about 2:30 a.m. The county attorney then asked to get a written statement. The defendant agreed. The county attorney then advised the defendant that he would be taken to a hospital for blood and urine tests and that afterwards they could get the written statement.

Robinson was taken to a hospital and returned at about 3:30 a.m. Maxey asked the defendant to make a written statement. The defendant answered that he was too tired and that he would do it in the morning. He was returned to his cell.

At about 8 a.m., Officer Van Butsel contacted the defendant and took him to the county attorney's office. The defendant was again advised of his Miranda rights. Subsequently, the defendant made a written statement in which he confessed to the shooting of Archie Robinson.

Defendant was charged by information of first degree murder. He entered a plea of not guilty and the cause was set for trial before a jury. On the second day of the trial, one of the jurors reported that he had heard remarks from some persons who had been in the courtroom to the effect that one of the witnesses was lying. The juror had heard the remarks as he was leaving the courtroom. The defense immediately moved for a mistrial. The trial judge noted that any possible prejudice would be against the State because the witnesses that day had been prosecution witnesses. The motion was denied. The judge questioned each juror individually whether he heard the remarks and, if so, would the remarks affect that juror's ability to be fair and impartial. Another juror and one alternate juror had heard the remarks. All three stated that the re-

marks would not impair their ability to be fair and impartial. The trial continued and, at the conclusion of jury deliberations, a verdict of guilty of second degree murder was rendered.

Defendant contends that the trial court erred in its determination not to exclude from evidence statements which had been made by the defendant at the Sarpy County jail and at the Lincoln City-County jail. The defendant argues that the statement made at the Sarpy County jail should be excluded because the police did not observe his rights as guaranteed by Miranda v. Arizona, 384 U. S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966). Specifically, he quotes the following language from that opinion: "Once warnings have been given the subsequent procedure is clear. If the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease." The trial court, following a Jackson-Denno hearing, ruled that any statement made at the Sarpy County jail was made freely, voluntarily, intelligently, and understandingly.

The statement made at the Sarpy County jail was volunteered by the defendant. The question came as Ideen was leaving the cell. Clearly, it was a voluntary statement. In Miranda v. Arizona, *supra,* it is stated: "Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by our holding today." Defendant further contends that the oral and written statements which were obtained by the county attorney in Lincoln should be suppressed because they were obtained by promising medical attention to the defendant if he made the statements. Defendant claims that he was a heroin addict and that he was going through withdrawal at the time of the statements.

In State v. McDonald, 195 Neb. 625, 240 N. W. 2d 8 (1976), we held that the basic determination is whether

or not the totality of the circumstances demonstrates the voluntariness or involuntariness of the statements. In doing so we followed the dictates of Schneckloth v. Bustamonte, 412 U. S. 218, 93 S. Ct. 2041, 36 L. Ed. 2d 854 (1973). In the McDonald opinion, the following was said: "To be admissible, a statement or confession must be free and voluntary. It must not be extracted by any sort of threats or violence, nor obtained by any direct or implied promises, however slight, nor by the exertion of any improper influence."

The totality of the circumstances in the current case supports the trial court's conclusion, after the Jackson-Denno hearing, that the statements had been made freely, voluntarily, and intelligently. Defendant testified that prior to the first conversation he had complained about an upset stomach and a headache. He stated that the police told him he would be taken to a hospital following the conversation. However, it is clear that the hospital visit was intended to obtain a blood and urine sample from the defendant, not for treatment of his complaints. The defendant did not ask for treatment at the hospital. Following his return from the hospital, defendant was allowed to sleep. Defendant testified that he vomited during that time. The evidence shows that a nurse did see the defendant prior to the second conversation. Defendant received medication at that time; however, the medication was not for the withdrawal symptoms. Prior to the second conversation, defendant also indicated that he was sick; however, he stated to the police that he felt well enough to make a statement. Upon cross-examination, the defendant was asked if he was told that he would not receive medical attention unless he made a statement. The defendant answered, "No." By his own admission, the defendant has shown that no promises of medical attention were made. He now argues that the statements were not a product of a

free will. This argument is without a sound basis.

Defendant next contends that the trial court denied him the constitutional right to a fair trial before an impartial jury of his peers because the court did not grant a mistrial after the incident in which two of the jurors overheard statements concerning the truthfulness of one of the State's witnesses.

In State v. Goff, 174 Neb. 548, 118 N. W. 2d 625 (1962), we stated that an accused has a constitutional right to a public trial by an impartial jury, and where it appears to the Supreme Court that the accused has not been afforded a fair trial it is the duty of the Supreme Court to grant a new trial.

The situation presented is one in which a juror may have become unfairly prejudiced during the course of a trial. The retention or rejection of a juror is a matter of discretion for the trial court.

In State v. Myers, 190 Neb. 466, 209 N. W. 2d 345 (1973), a question of prejudice of the jurors on one case was presented because they had earlier sat as jurors in a related case. We held: "Where a jury has been impaneled and sworn as one of several juries selected from a single jury panel for the subsequent trial of a series of criminal cases, if the court is informed before the presentation of evidence begins of matters which might reasonably constitute grounds for a challenge for cause of one or more jurors, which grounds arose out of matters occurring after the jury was sworn, *it is the duty of the court to hear evidence and examine the jurors and determine whether any juror might be subject to disqualification for cause.* A failure to inquire under such circumstances constitutes such fundamental unfairness as to jeopardize the constitutional guaranty of the right to trial by an impartial jury. Any lowering of those constitutional standards strikes at the very heart of the jury system." (Emphasis supplied.) In the current case, the trial

judge followed a similar procedure in determining whether any of the jurors had heard statements which would render them incapable of giving a fair and impartial judgment. We hold that the defendant's constitutional right to a fair trial by impartial jurors was not violated by such procedure. The trial judge questioned the jurors as to the incident and was satisfied that a fair and impartial verdict could be rendered by each juror.

Defendant last contends that the presentence investigation report obtained by the trial court contained information outside the scope of that allowed by section 29-2261 (3), R. R. S. 1943, which provides: "(3) The presentence investigation and report shall include, where available, an analysis of the circumstances attending the commission of the crime, the offender's history of delinquency or criminality, physical and mental condition, family situation and background, economic status, education, occupation and personal habits and any other matters that the probation officer deems relevant or the court directs to be included. All local and state police agencies, and adult and correctional institutions shall furnish to the probation officer copies of such criminal records, in any such case referred to the probation officer by the court of proper jurisdiction, as the probation officer shall require without cost to the court or the probation officer." Defendant specifically objects to the massive compilation of police reports and county attorney memoranda which are within the report. Defendant objected to the report prior to sentencing.

We have previously held that "police reports, affidavits, and other information" may be considered by the trial judge in sentencing. See, State v. Lacy, *ante* p. 567, 254 N. W. 2d 83 (1977); State v. Holzapfel, 192 Neb. 672, 223 N. W. 2d 670 (1974). Such information is allowable under section 29-2261 (3), R. R. S. 1943, under the language that the report may

include "any other matters that the probation officer deems relevant or the court directs to be included." The police reports and memoranda were properly included in the presentence investigation report. Defendant's assignment of error on that ground is without merit.

The judgment of the District Court is affirmed.

AFFIRMED.