Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
05/14/2021 08:11 AM CDT

State of Nebraska, appellee, v.
James M. Madren, appellant.
___ N.W.2d ___

Filed February 19, 2021.    No. S-19-240.

1. **Motions for Mistrial: Appeal and Error.** Decisions regarding motions
   for mistrial are directed to the discretion of the trial court and will be
   upheld in the absence of an abuse of discretion.
2. **Judgments: Words and Phrases.** An abuse of discretion occurs when a
   trial court's decision is based upon reasons that are untenable or unrea-
   sonable or if its action is clearly against justice or conscience, reason,
   and evidence.
3. **Criminal Law: Motions for New Trial: Evidence: Appeal and Error.**
   A de novo standard of review applies when an appellate court is review-
   ing a trial court's dismissal of a motion for a new trial under Neb. Rev.
   Stat. § 29-2102(2) (Reissue 2016) without conducting an evidentiary
   hearing. But a trial court's denial of a motion for new trial after an evi-
   dentiary hearing is reviewed for an abuse of discretion.
4. **Constitutional Law: Speedy Trial: Juries.** The U.S. Constitution and
   the Nebraska Constitution both guarantee a speedy public trial by an
   impartial jury.
5. **Constitutional Law: Trial: Juries.** The presence of an alternate juror
   during the jury's deliberations violates a defendant's federal and state
   constitutional rights to a fair and impartial trial.
6. **Juries: Verdicts.** The presence of strangers during jury deliberations
   destroys the sanctity of the jury because the verdict of a jury should
   represent the concurring judgment, reason, and intelligence of the entire
   jury based upon the evidence and free from outside influence from any
   source whatever.
7. **Juries.** Once a case has been submitted to the jury, an alternate juror is
   a stranger to the proceedings regardless of whether the alternate juror
   was discharged.

8. **Juries: Presumptions: Appeal and Error.** The irregularity of the presence of an alternate juror in deliberations of the 12 regular jurors creates a rebuttable presumption of prejudice subject to a harmless error analysis.

9. **Constitutional Law: Trial: Juries: Presumptions: Appeal and Error.** The presence of an alternate juror in jury deliberations is a constitutional violation of the right to a fair and impartial trial that merely creates a rebuttable presumption of prejudice for purposes of a harmless error analysis.

10. **Motions for Mistrial: New Trial: Proof.** After an error has been properly preserved by a motion for a mistrial, in order for a new trial to be granted, it must be shown that a substantial right of the defendant was adversely affected and that the defendant was prejudiced thereby.

11. **Criminal Law: Trial: Juries: Verdicts: Appeal and Error.** In a jury trial of a criminal case, harmless error exists when there is some incorrect conduct by the trial court which, on review of the entire record, did not materially influence the jury in reaching a verdict adverse to a substantial right of the defendant.

Petition for further review from the Court of Appeals, MOORE, ARTERBURN, and WELCH, Judges, on appeal thereto from the District Court for Douglas County, JAMES T. GLEASON, Judge. Judgment of Court of Appeals reversed and remanded with directions.

Peder Bartling, of Bartling Law Offices, P.C., L.L.O., for appellant.

Douglas J. Peterson, Attorney General, and Siobhan E. Duffy for appellee.

HEAVICAN, C.J., MILLER-LERMAN, CASSEL, STACY, FUNKE, PAPIK, and FREUDENBERG, JJ.

FREUDENBERG, J.
### NATURE OF CASE
In a petition for further review from a direct appeal of a first degree sexual assault conviction, the defendant challenges the Nebraska Court of Appeals' affirmance of the district

court's denials of his motions for mistrial and new trial after the district court mistakenly failed to dismiss an alternate juror who remained with the jury during the first hour of deliberations. The defendant asserts the district court erred when it refused to inquire of the alternate before dismissing her, to hold an evidentiary hearing to question each of the jurors, or even to allow an affidavit of the alternate to be obtained, any of which could have been used to determine the extent of communications or other influence by the alternate during the jury's deliberations. The court instead instructed the jury to begin deliberations "from scratch," specifically telling them that it did not want to know the extent it "communicated back and forth" with the alternate. Then, after the verdict, the court generally requested that the jury "please let me know" whether any juror "consider[ed] any of the conversations or participation" of the alternate juror in reaching a verdict and, when no juror responded, was satisfied that the court's actions were sufficient to rectify any presumption of prejudice that arose when the court mistakenly permitted the alternate to intrude upon the sanctity of the jury deliberations without any safeguards limiting the alternate's participation.

## BACKGROUND

Following a jury trial, James M. Madren was convicted of first degree sexual assault, in violation of Neb. Rev. Stat. § 28-319(1)(c) (Reissue 2016), a Class II felony. Madren was sentenced to 30 to 38 years' imprisonment. Madren appealed the conviction to the Court of Appeals, assigning, among other things, that the district court erred in overruling Madren's motions for mistrial and new trial after an alternate juror was not discharged for the first hour of jury deliberations. The Court of Appeals affirmed. We granted further review on the question of whether the Court of Appeals erred by affirming the district court's denials of Madren's motions for mistrial and new trial.

The basis for the motions was the fact that, at trial, after the parties rested and an hour after the case was submitted to the jury, the district court became aware of the fact that it had mistakenly failed to discharge the alternate juror. The district court called back counsel for both sides, notified them of the court's mistake, and proposed to "call the jury back in, remove the alternate[,] and send the jury back for deliberations." The district court gave each counsel the opportunity to respond to its proposal.

Madren indicated his intent to move for a mistrial. Madren asked the court to inquire of the alternate juror the extent, if any, the alternate had participated in deliberations. Further, Madren requested that the court admonish the remaining 12 jurors that any opinions expressed by the alternate were not to be considered in deliberations. The court indicated it intended to admonish the jury to start its deliberations "anew from spot zero," but refused to make any inquiries of the alternate.

The court then recalled the jury, notified the jury of the error, and identified and dismissed the alternate juror. At that time, the court asked the jury to again "refer to the instructions . . . regarding your duties as jurors." It also specifically told the jury, "I don't want to inquire to what extent you communicated back and forth." Rather, the court instructed the jury to start "again from scratch as if your deliberations start now and without the alternate present." The court asked the jury if the instruction made sense to them, all jurors responded affirmatively, and the jury was then dismissed to begin deliberations anew.

When the jury retired back to the jury room, Madren moved for a mistrial. Madren argued that without knowing the extent that the alternate participated in persuading the jurors to change their minds, it could not be determined that the potential persuasion by the alternate could be undone when the jury was instructed to start deliberations over. The court immediately overruled Madren's motion for mistrial, reasoning that it

was satisfied that the cautionary instruction to have the jurors commence their deliberations anew was sufficient.

After the jury returned its verdict, the jury was polled at defense counsel's request and each juror was asked whether the guilty verdict was his or her final verdict. Each juror answered, "Yes." No further questioning of any individual juror took place. The district court generally requested that the jury "please let me know" whether any of its members, in reaching the verdict, "consider[ed] any of the conversations or participation" of the alternate juror while she was with them in the jury room. There was no audible response, and the judge rendered judgment on the verdict.

After the verdict was entered, Madren moved for a new trial, alleging in the written motion, among other things, that the alternate juror's participating in deliberations for over an hour could not be cured by any instruction, prejudiced Madren, and prevented him from having a fair trial. The order scheduling a hearing on the motion for new trial was not included in the transcript. The bill of exceptions of the hearing, however, indicates that the court was not allowing evidence at the hearing, but only arguments.

At the hearing on the motion for a new trial, Madren requested that the court keep the motion under advisement until sentencing in order to give defense counsel time to at least secure an affidavit from the alternate juror as to her participation in deliberations, if the court were inclined to allow any evidence, in the form of an affidavit or direct testimony, regarding what the alternate actually did. Madren explained that if the affidavit indicated the alternate juror substantially participated, it "would support our argument that there was prejudice to [Madren] by having that alternate in the jury room."

The court overruled Madren's motion for a new trial without giving Madren an opportunity to secure the alternate juror's affidavit or for either party to present any evidence. The court concluded that "all the matters regarding the alternate were

resolved in the jury's verdict after [its] admonition by the Court," the jury was polled after returning its verdict, and even if there was such an error, it would be harmless.

The Court of Appeals affirmed. Madren petitioned for further review limited to the Court of Appeals' affirmance of the district court's decision to overrule Madren's motion for mistrial and motion for new trial regarding the alternate juror's participating in deliberations. We granted further review.

## ASSIGNMENTS OF ERROR

In Madren's petition for further review, he assigns that the Court of Appeals erred by misconstruing Nebraska law in affirming the district court's decision to overrule Madren's motions for mistrial and new trial after the district court allowed a nonjuror, the alternate juror, to participate in the deliberation process that rendered a guilty verdict against Madren.

## STANDARD OF REVIEW

[1,2] Decisions regarding motions for mistrial are directed to the discretion of the trial court and will be upheld in the absence of an abuse of discretion.[1] An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence.[2]

[3] We determine a de novo standard of review applies when an appellate court is reviewing a trial court's dismissal of a motion for a new trial under Neb. Rev. Stat. § 29-2102(2) (Reissue 2016) without conducting an evidentiary hearing. But a trial court's denial of a motion for new trial after an evidentiary hearing is reviewed for an abuse of discretion.[3]

---

[1] *State v. Briggs*, 303 Neb. 352, 929 N.W.2d 65 (2019).

[2] *State v. Senteney*, 307 Neb. 702, 950 N.W.2d 585 (2020).

[3] *State v. Cross*, 297 Neb. 154, 900 N.W.2d 1 (2017).

## ANALYSIS

[4,5] The U.S. Constitution and the Nebraska Constitution both guarantee a speedy public trial by an impartial jury.[4] We have held that the presence of an alternate juror during the jury's deliberations violates a defendant's federal and state constitutional rights to a fair and impartial trial.[5]

[6,7] The presence of strangers during jury deliberations destroys the sanctity of the jury because the verdict of a jury should represent the concurring judgment, reason, and intelligence of the entire jury based upon the evidence and free from outside influence from any source whatever.[6] We have held that once a case has been submitted to the jury, an alternate juror is a stranger to the proceedings regardless of whether the alternate juror was discharged.[7] An alternate, we have explained, is not part of the deliberating body and should not be permitted with the group, where an alternate may have an influence on the jury's determination.[8]

Neb. Rev. Stat. § 29-2022 (Reissue 2016) states that once a case has been submitted, the jury shall have no communication with nonjurors, in order to ensure that an accused receives the right of an impartial jury and to shield the jury from improper conduct by jurors during the course of their deliberations.[9] And, at the time of Madren's trial, Neb. Rev. Stat. § 29-2004 (Reissue 2016) required the court to discharge alternate jurors "upon the final submission of the cause to the jury."[10]

Madren correctly points out that several jurisdictions hold that the presence of an alternate in the jury room during

---

[4] U.S. Const. amend. VI; Neb. Const. art. I, § 11.

[5] *State v. Menuey*, 239 Neb. 513, 476 N.W.2d 846 (1991).

[6] See, *id*.; *Bramlett v. State*, 129 Neb. 180, 261 N.W. 166 (1935).

[7] See *Menuey, supra* note 5.

[8] See *id.*

[9] See *State v. Barranco*, 278 Neb. 165, 769 N.W.2d 343 (2009).

[10] See *Menuey, supra* note 5.

deliberations constitutes reversible error per se. These jurisdictions reason that it is impossible to make an adequate inquiry that would disprove prejudice from such a constitutional violation.[11] It could not be known whether or to what extent that participation affected the other jurors or the ultimate verdict because any inquiry into the mental process of jurors is impermissible.[12] Furthermore, these jurisdictions reason that a factual inquiry into the extent of an alternate's participation and influence upon the jury is itself an intrusion into the proceedings and privacy of the jury.[13] The 10th Circuit Court of Appeals in *United States v. Beasley*[14] reasoned that any inquiry of the jury under a prejudice standard "is itself a dangerous intrusion into the proceedings of the jury" and that the purpose sought to be achieved at a prejudice hearing "is not of sufficient importance to warrant such an inquiry in comparison to the possible harm or appearance of interference."

At least one jurisdiction has modified this per se approach by making a distinction between instances where the alternate juror was present while the jury actually deliberated and instances where the alternate was present only during "limited organizational activity," such as electing a foreperson.[15] If the alternate is present after deliberations begin, the error is fundamental and prejudicial per se, and a new trial is necessary.[16]

---

[11] See, *Stokes v. State*, 379 Md. 618, 843 A.2d 64 (2004) (citing *United States v. Beasley*, 464 F.2d 468 (10th Cir. 1972)); *Com. v. Smith*, 403 Mass. 489, 531 N.E.2d 556 (1988); *State v. Bindyke*, 288 N.C. 608, 220 S.E.2d 521 (1975); *Brigman v. State*, 350 P.2d 321 (Okla. Crim. App. 1960); *Commonwealth v. Krick*, 164 Pa. Super. 516, 67 A.2d 746 (1949).

[12] See, *Smith, supra* note 11; *Bindyke, supra* note 11 (citing *Beasley, supra* note 11; *State v. Cuzick*, 85 Wash. 2d 146, 530 P.2d 288 (1975); and *Krick, supra* note 11).

[13] See *id.*

[14] *Beasley, supra* note 11, 464 F.2d at 470.

[15] *Bouey v. State*, 762 So. 2d 537, 540 (Fla. App. 2000).

[16] See *id.*

But if the alternate is only present during organizational activities and the case is not discussed, a harmless error analysis is appropriate.[17] This jurisdiction has emphasized that it is critical that the trial court conduct an inquiry and make factual determinations on the record in order to determine how long the alternate was with the other jurors and what was discussed while the alternate was present.[18]

[8] Both our court and the U.S. Supreme Court have repeatedly recognized that most constitutional errors can be harmless.[19] Thus, under most circumstances, we have rejected a per se rule for irregularities or misconduct involving the sanctity of the jury.[20] We have specifically held that the irregularity of the presence of an alternate juror in deliberations of the 12 regular jurors creates a rebuttable presumption of prejudice subject to a harmless error analysis.[21]

In *State v. Menuey*,[22] we explained that the presence of an alternate juror in the jury room, while a fundamental constitutional violation, is nevertheless distinct from the presence of a court or law enforcement officer for a significant period of time during deliberations—which we held in *Gandy v. State*[23] and *Cooney v. State*[24] is prejudice per se regardless

---

[17] See *id.*

[18] See *id.*

[19] See, *State v. Abram*, 284 Neb. 55, 815 N.W.2d 897 (2012); *Menuey, supra* note 5 (citing *Simants v. State*, 202 Neb. 828, 277 N.W.2d 217 (1979)).

[20] See, *State v. Anderson*, 252 Neb. 675, 564 N.W.2d 581 (1997); *State v. LeBron*, 217 Neb. 452, 349 N.W.2d 918 (1984); *Simants, supra* note 19; *State v. Robinson*, 198 Neb. 785, 255 N.W.2d 835 (1977); *Cooney v. State*, 61 Neb. 342, 85 N.W. 281 (1901); *Gandy v. State*, 24 Neb. 716, 40 N.W. 302 (1888). See, also, *State v. Owen*, 1 Neb. App. 1060, 510 N.W.2d 503 (1993).

[21] *Menuey, supra* note 5.

[22] *Id.*

[23] *Gandy, supra* note 20.

[24] *Cooney, supra* note 20.

of whether the officer participated or advised the jury in any manner.[25] A court officer might be expected to monitor the jury's discussions and a law enforcement officer could be expected to inhibit criticism of the State's case, thereby increasing the inhibitory effect of their presence.[26]

We ultimately held in *Menuey* that the evidence presented at the evidentiary hearing, at which the alternate and the jurors testified, rebutted the presumption of prejudice. The alternate and the jurors had been called by the trial court to testify, and it was undisputed that no deliberations took place during the alternate's presence, which was for only approximately 10 minutes while the jury chose a foreman. The jurors and the alternate testified that the alternate did not participate in the choosing of the foreman; nor did the alternate discuss the case with the jurors when the bailiff had allowed the alternate to join them for lunch. Finally, the jurors testified their decisions were not in any way influenced by the alternate's presence.[27]

[9] We decline Madren's invitation to overrule *Menuey* and adopt a per se standard for prejudice when an alternate is mistakenly allowed in juror deliberations. We reaffirm that under the statutory scheme for alternates controlling at the time of Madren's trial, the presence of an alternate juror in jury deliberations is a constitutional violation of the right to a fair and impartial trial that merely creates a rebuttable presumption of prejudice for purposes of a harmless error analysis.

This approach, adopting a rebuttable presumption of prejudice in a harmless error analysis for the unauthorized presence of an alternate juror in jury deliberations, has been

---

[25] See, *Simants, supra* note 19; *Cooney, supra* note 20.

[26] *Menuey, supra* note 5. But see *Simants, supra* note 19.

[27] *Menuey, supra* note 5.

adopted by a substantial number of other jurisdictions.[28] We disagree with the reasoning of the "prejudice per se" jurisdictions that an evidentiary hearing to determine prejudice is fruitless because of restrictions on examinations of jurors' mental states.

As we noted in *Menuey*, Neb. Rev. Stat. § 27-606(2) (Reissue 2016) describes the confines of permissible inquiry into jurors' minds and allows a juror to testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror.[29] Section 27-606(2) states in full:

> Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith, *except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror.* Nor may his affidavit or evidence of any statement by him indicating an effect of this kind be received for these purposes.

(Emphasis supplied.) We explained in *Menuey* that the jurors' and the alternate's testimony as to both the objective extent

---

[28] See, *Stokes, supra* note 11 (citing *United States v. Watson*, 669 F.2d 1374 (11th Cir. 1982)); *State v. Crandall*, 452 N.W.2d 708 (Minn. App. 1990); *People v. Boulies*, 690 P.2d 1253 (Colo. 1984); *State v. Scrivner*, 676 S.W.2d 12 (Mo. App. 1984); *State v. Coulter*, 98 N.M. 768, 652 P.2d 1219 (N.M. App. 1982); *Yancey v. State*, 640 P.2d 970 (Okla. Crim. App. 1982); *Cuzick, supra* note 12; *Johnson v. State*, 235 Ga. 486, 220 S.E.2d 448 (1975).

[29] See *Menuey, supra* note 5.

of the alternate's participation in deliberations and the jurors' subjective determination that they were not influenced by the alternate's presence was thus properly received.[30] The alternate's participation during jury deliberations, as a stranger to the proceedings, is extraneous information and outside influence. While the court may still be prohibited from inquiring of the jurors as to what they said to the alternate, the court is not prohibited from questioning individual jurors and the alternate as to how, if at all, the alternate communicated to the jury.[31] The court is also permitted to inquire as to individual jurors whether the alternate's outside influence was brought to bear upon them.[32]

We observe that since Madren's trial, amendments made by 2020 Neb. Laws, L.B. 881, effective November 14, 2020, now allow courts to retain alternate jurors after the jury retires to deliberate, with added safeguards intended to protect the sanctity of juror deliberations.[33] Under § 29-2004 as amended, if a court decides to retain alternate jurors, the court "shall ensure that a retained alternate does not discuss the case with anyone until that alternate replaces a juror or is discharged."[34] It does not elaborate on how that must be done and does not indicate that the retained alternate should be present in juror deliberations. Also, if the alternate replaces a juror after deliberations have started, "the court shall instruct the jury to begin its deliberations anew."[35]

This case presents the unique situation where the district court, through its own error, allowed the alternate, without any

---

[30] *Id*.

[31] See, *Zeeb v. Delicious Foods*, 231 Neb. 358, 436 N.W.2d 190 (1989); *Owen, supra* note 20.

[32] § 27-606; *Menuey, supra* note 5. See, also, *LeBron, supra* note 20; *Robinson, supra* note 20.

[33] § 29-2004 (Cum. Supp. 2020).

[34] *Id*.

[35] *Id*.

safeguards, to remain in the jury room for approximately an hour after the case was submitted to the jury. Yet, the district court denied both the motion for a mistrial and the motion for a new trial without conducting an evidentiary hearing or even questioning any individual juror to determine the extent of the alternate's participation in deliberations. And no information was permitted to be obtained from the alternate before the court dismissed her or when Madren sought to obtain an affidavit from her prior to the court's deciding the motion for new trial.

When the grounds for a motion for a mistrial involve the sanctity of jury deliberations, the defendant has generally been given an opportunity to have the jurors both questioned and polled, and whether the defendant was prejudiced depends in part on what the jurors say on interrogation.[36] Even more to the point, § 29-2102(2) dictates with respect to a motion for new trial that the court "shall" hold an evidentiary hearing and make findings of fact and law "[i]f the motion for new trial and supporting documents set forth facts which, if true, would materially affect the substantial rights of the defendant . . . ."

As a general rule, the use of the word "shall" is considered to indicate a mandatory directive, inconsistent with the idea of discretion.[37] In *State v. Cross*,[38] we held that we apply a de novo standard of review to a trial court's dismissal of a motion for a new trial under § 29-2102(2), without first conducting an evidentiary hearing.

[10] After an error has been properly preserved by a motion for a mistrial, in order for a new trial to be granted, it must be shown that a substantial right of the defendant was

---

[36] See *State v. Myers*, 258 Neb. 272, 603 N.W.2d 390 (1999). See, also, *LeBron, supra* note 20; *Robinson, supra* note 20; *Owen, supra* note 20.

[37] *Flores v. Flores-Guerrero*, 290 Neb. 248, 859 N.W.2d 578 (2015).

[38] *Cross, supra* note 3.

adversely affected and that the defendant was prejudiced thereby.[39] Pursuant to Neb. Rev. Stat. § 29-2101 (Reissue 2016), a new trial after a verdict of conviction may be granted on the application of the defendant on specified grounds "affecting materially his or her substantial rights," including, as set forth in subsection (1), "[i]rregularity in the proceedings of the court . . . or in any order of the court or abuse of discretion by which the defendant was prevented from having a fair trial." When the motion for a new trial is on grounds set forth in § 29-2101(2), (3), and (6), then § 29-2102 requires that they be supported by affidavits showing the truth of such grounds. But § 29-2102 does not require that the movant support with affidavits a motion for a new trial made on the grounds set forth under § 29-2101(1). Moreover, it was undisputed that the court mistakenly allowed the alternate to be present during an hour of jury deliberations without any instruction or other safeguards limiting her participation.

In our de novo review, we hold that the court had a mandatory duty under § 29-2102 to conduct an evidentiary hearing. Madren's motion for new trial set forth facts which, if true, would materially affect his substantial rights. The constitutional right to trial by a fair and impartial jury that is affected by a stranger's presence in the jury room is a substantial right.[40] As discussed, there is a rebuttable presumption of prejudice when an alternate, who should have been discharged, is mistakenly allowed with the jury during deliberations.[41] Both Madren and the State were entitled to a hearing on the motion for new trial in order to determine the extent and nature of any communications by the alternate regarding the case and whether the alternate's presence or communications materially influenced the jury, thus giving the State an opportunity to

---

[39] *State v. Hudson*, 268 Neb. 151, 680 N.W.2d 603 (2004).

[40] See *Menuey, supra* note 5.

[41] See, *id.*; *Simants, supra* note 19.

rebut the presumption of prejudice that arose by virtue of the alternate's unauthorized presence.

The district court's general request to the jury, that any of its members should "please let me know" if, in reaching the verdict, they "consider[ed] any of the conversations or participation" of the alternate juror while she was with them in the jury room, was not an adequate replacement for individualized questioning of whether the jurors were influenced. And, under these facts, the court's instruction to begin deliberations "from scratch" did not nullify its mandatory duty to conduct an evidentiary hearing for purposes of determining if the presumption of prejudice had been rebutted. Such an instruction is not a panacea for every violation of the sanctity of juror deliberations.

The requirement in the 2020 amendment to § 29-2004 to instruct the jury to begin its deliberations anew if the alternate replaces a juror after deliberations have started does not suggest that the Legislature believes such an instruction could cure improper influence by alternates who are mistakenly left in deliberations with no instruction as to how to conduct themselves and where the extent of communications by the alternates are unknown. It is instead a measure that assumes there has been no improper influence and merely fully includes the alternate in the deliberations after the alternate has replaced a juror.

This is not to say that an instruction to begin deliberations anew after the sanctity of jury deliberations has been violated is irrelevant, but the effectiveness of such an instruction in erasing all prejudice from the presumed unauthorized influence of the jurors necessarily depends on the extent of the influence. And because the court refused to conduct an evidentiary hearing, it is precisely this that we do not know.

Without information as to whether and to what extent the alternate communicated with the jury during deliberations, we cannot determine the merits of whether the court erred in denying the motion for a new trial. But we can determine that

the court erred in doing so without first conducting an evidentiary hearing.

The facts of this case are similar to those presented in *State v. Owen*,[42] wherein the district court had refused to conduct an evidentiary hearing upon the defendant's motion for new trial and the Court of Appeals remanded the matter for an evidentiary hearing on the motion. The defendant in *Owen* had presented affidavits suggesting that the court had informally expounded upon its instruction on the term "reasonable doubt," when it entered the jury room before evening recess to admonish the jurors concerning their separation, and, further, that jurors had brought dictionary definitions of the term "reasonable doubt" into their deliberations. The Court of Appeals explained that while the alleged violations were not prejudicial per se, due to the lack of an evidentiary hearing, there was insufficient information to determine whether there was a reasonable possibility that extraneous information or the irregularities of the court's communications affected the verdict.

Thus, the Court of Appeals in *Owen* held that the district court judge had abused his discretion in failing to recuse himself and allow an evidentiary hearing, which deprived the defendant of her substantial right to determine whether she had been prejudiced by either the alleged further instruction on the burden of proof by the judge or the juror's production of extraneous dictionary information. Without expressing any opinion as to whether the alleged misconduct in connection with the jury deliberations occurred or whether it was prejudicial if it occurred, the Court of Appeals vacated the order denying the motion for a new trial and remanded the matter back to the trial court with directions that a judge other than the trial judge rule on the motion for new trial after conducting an evidentiary hearing.

[11] We likewise find it necessary that the district court's order denying Madren's motion for a new trial should be

---

[42] *Owen, supra* note 20.

reversed and that the matter should be remanded for an evidentiary hearing to determine whether Madren was prejudiced by the violation of his right to a fair and impartial jury stemming from the alternate's unauthorized presence with the jury during deliberations. In a jury trial of a criminal case, harmless error exists when there is some incorrect conduct by the trial court which, on review of the entire record, did not materially influence the jury in reaching a verdict adverse to a substantial right of the defendant.[43] However, we cannot enter into a harmless error analysis without knowing the extent of the alternate's participation in the jury deliberations.

The Court of Appeals erred in affirming the district court's denials of Madren's motions for mistrial and new trial, because the district court erred in failing to hold an evidentiary hearing regarding the alternate juror's participation in deliberations. We reverse the decision of the Court of Appeals and remand the matter to the Court of Appeals with directions to remand the matter to the district court to conduct the mandated evidentiary hearing as required by § 29-2102(2). Upon remand, nothing in this opinion should be construed to circumscribe the authority of the trial court to establish procedures to protect the integrity of the proceedings.

## CONCLUSION

For the foregoing reasons, we reverse the judgment of the Court of Appeals and remand the matter with directions.

REVERSED AND REMANDED WITH DIRECTIONS.

[43] *State v. Bjorklund*, 258 Neb. 432, 604 N.W.2d 169 (2000), *abrogated on other grounds, State v. Mata*, 275 Neb. 1, 745 N.W.2d 229 (2008).