STATE OF NEBRASKA, APPELLEE, V.
DAVID K. HARRISON, APPELLANT.

651 N.W.2d 571

Filed October 4, 2002.   No. S-01-1304.

Michael T. Levy and Kathy Pate Knickrehm for appellant.

Don Stenberg, Attorney General, and Marilyn B. Hutchinson for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

MILLER-LERMAN, J.
## I. NATURE OF CASE
David K. Harrison appeals the order of the district court for Douglas County denying his motion for postconviction relief after an evidentiary hearing. In its order, the district court rejected Harrison's constitutional claims based on jury misconduct and ineffective assistance of counsel. We affirm.

## II. STATEMENT OF FACTS
Harrison was convicted on January 11, 1985, of first degree murder for the shooting death of his wife, Maria F. Harrison. On February 1, he was sentenced to life imprisonment. Harrison appealed, and his conviction and sentence were affirmed. *State v. Harrison*, 221 Neb. 521, 378 N.W.2d 199 (1985).

On March 17, 1999, Harrison filed a motion for postconviction relief. In the motion, Harrison asserted that his constitutional rights had been violated due to jury misconduct at trial

and that he had received ineffective assistance of counsel at trial and on appeal. Harrison alleged three separate incidents of jury misconduct at the original trial. A postconviction evidentiary hearing was held July 20, 2000.

At the hearing, Harrison presented witnesses who testified regarding the three alleged incidents of jury misconduct. The first incident (referred to hereafter as the "January 9 elevator incident") involved a prospective juror who had been excused for cause but who had conversed about the case with, or in the presence of, two jurors and an alternate juror during the trial. At the evidentiary hearing in this postconviction action, Harrison entered into evidence an entry from the trial judge's minutes which was dated Thursday, January 10, 1985, and which stated as follows:

> The Court conferred in chambers with [counsel for the State] and [counsel for Harrison]. The Court advised both counsel that it had been advised by three of the jurors that the juror who had been excused for cause . . . had conversed briefly about this case with, or in the presence of, two of the jurors and the alternate juror yesterday in the Courthouse after lunch. The Court, by agreement of both counsel, talked individually and separately with jurors . . . .
> The Court then advised both counsel of its conversations with the three jurors. Both counsel agreed that the jury should commence their [sic] deliberations.

J.J., a juror in Harrison's underlying trial, testified at the postconviction evidentiary hearing. J.J. testified that following lunch on January 9, 1985, at a time when evidence was still being introduced, he and some other jurors rode in an elevator with an excused juror who stated her opinion that Harrison was guilty. J.J. discussed the incident with the other jurors, and they decided to report it to the judge. J.J. reported the incident to the judge at the end of the day.

The next day, the trial judge conferred with J.J., and they discussed the specifics of the incident. J.J. could not recall whether a court reporter, counsel, or anyone else was present during his discussion with the trial judge. J.J. testified without objection that the trial judge had asked him whether the excused juror's comments would influence his decision process. J.J. testified that

he had replied that they would not and that he told the trial judge that he would instead decide the case based on the evidence. After J.J. so testified, the district court in the present postconviction evidentiary hearing asked J.J., "[I]s that what happened? You based your decision on the evidence at the time . . . ." Harrison objected to the district court's question on the basis that Neb. Evid. R. 606(2), Neb. Rev. Stat. § 27-606(2) (Reissue 1995), prohibits a juror from testifying about deliberations, and J.J. did not answer the question. The district court then stated, "I'm not asking about the deliberations" and then restated its question, asking, "You stated that you told the judge, at the time, that you were going to base your decision on the evidence. Is that what happened in your . . . case?" J.J. replied, "Yes."

Depositions of the trial judge and Harrison's trial counsel were entered into evidence at the postconviction hearing. Trial counsel also served as counsel on appeal. Counsel testified that during the trial, he had heard from a relative of Harrison that someone had made comments about the case in the presence of jurors. Counsel brought the issue to the attention of the trial judge, and the trial judge informed him that jurors had reported the January 9 elevator incident and that the trial judge intended to speak individually with the affected jurors outside the presence of counsel and Harrison. The trial judge later informed Harrison's counsel and the State's counsel regarding his conversations with the jurors, and both counsel agreed that jury deliberations could proceed. Harrison's counsel testified, however, that the trial judge did not tell him either that the person making the comments was an excused juror or that the comments included expression of a belief that Harrison was guilty. Counsel testified that he had not moved for mistrial on the basis of the January 9 elevator incident because he believed that the incident, as he understood it, did not amount to jury misconduct or jury tampering and would not support a motion for mistrial. Counsel further testified that in his opinion, comments made by an excused juror concerning Harrison's guilt would be prejudicial to Harrison and could be grounds for mistrial. Counsel testified that at the time of trial, he informed Harrison of the January 9 elevator incident and the manner in which the trial judge had handled it.

The trial judge testified by deposition that he had no independent recollection of trial proceedings surrounding the January 9 elevator incident outside of that which was contained in the minute entry. He indicated that because he did not hold a hearing on the record, his discussions with the jurors must have satisfied him that no prejudice would result from the comments they had heard. The trial judge also testified that although he did not hold a hearing on the record in Harrison's case, his typical procedure in a similar situation would now be to hold a hearing on the record whether or not he thought there was prejudice.

Harrison alleged in his postconviction petition that after he learned of the January 9 elevator incident years after the trial, he hired an investigator who uncovered two other incidents of jury misconduct which were apparently not brought to the attention of the trial court.

Irene Nuno testified via affidavit attached to Harrison's motion and at the evidentiary hearing regarding one of the additional incidents (referred to hereafter as "the January 8 incident"). Nuno was related to the victim by marriage and had developed a close relationship with both the victim and Harrison. She attended portions of Harrison's trial. Following the January 8, 1985, trial session, Nuno was standing in the hallway outside the courtroom where an unidentified woman was loudly voicing her opinion that Harrison was "guilty as sin" and that she wished she was still on the jury. Shortly after the woman began voicing her opinion, three or four jurors, whom Nuno recognized from having attended the trial and who wore juror identification badges, exited the courtroom. The woman continued voicing her opinions in a manner that Nuno believed the jurors would have heard. Nuno further stated that when an elevator arrived, Nuno and her family, the woman, and the jurors got on the elevator. In the elevator, the woman told the occupants of the elevator that Harrison was guilty, "a nut case," and "crazy" and that a friend had told her that Harrison "was eventually going to kill someone because of his emotional condition." Nuno testified that on January 10, 1985, she telephoned Harrison's counsel to report the incident and that he told her that it had already been taken care of.

Joan Diane King testified in an affidavit and at the hearing regarding the other additional incident (referred to hereafter as "the January 9 hallway incident"). King is Nuno's sister. King stated that she attended the last day of Harrison's trial on January 9, 1985. King stated that during a morning recess, she joined a group of approximately five people smoking cigarettes. King recognized four of the five as jurors from having seen them in the jury box. King noted that all five were wearing juror badges. One woman was wearing a juror badge, but King did not recognize her as a juror. The woman was talking about the relationship between Harrison and the victim and stated that there had been a history of violence in their marriage and that each had been physically abusive toward the other. The woman told the jurors that she had learned this information from a friend who knew the victim. When a male juror expressed that he would never think by looking at Harrison that he could be a " 'cold killer,' " the woman responded that he "didn't know the half of the things [Harrison] had done to [the victim]" and that Harrison was "a first degree killer and murderer." King testified that she telephoned Harrison's attorney after the conclusion of trial that day and reported to him what she heard in the hallway during the morning recess. She testified that the attorney told her the woman had been excused from jury service and that the attorney "seemed otherwise unconcerned with the incident." Harrison's trial counsel testified in his deposition that although he recalled being advised by an unidentified person of the January 9 elevator incident, he did not recall that either Nuno or King had advised him of the additional incidents.

Harrison also offered his own deposition at the evidentiary hearing. Harrison testified that at the time of trial, he was not made aware of the January 9 elevator incident and was not aware of or present at the meetings between the trial judge and counsel and between the trial judge and jurors in regard to this incident. He testified that he did not become aware of the January 9 elevator incident until he reviewed the trial record in 1992 and that he did not become aware of the additional incidents reported by Nuno and King until he saw their affidavits in 1999. Harrison testified that if he had known of the January 9 elevator incident, he would have asked to be present

at a hearing regarding the incident and would have requested a mistrial. If he had been aware of the additional incidents reported by Nuno and King, he would have instructed counsel to report the incidents to the trial judge and would have asked counsel to move for a mistrial.

Following receipt of evidence in the instant case, the district court entered an order on November 2, 2001, denying Harrison's motion for postconviction relief. With reference to the three incidents described above, the district court rejected Harrison's 6th Amendment claims of a denial of his rights to trial by an impartial jury and to confrontation and his 5th and 14th Amendment claims of denial of due process. The district court further rejected Harrison's claim of ineffective assistance of counsel because it concluded that Harrison had not established any prejudice resulting from counsel's alleged deficient performance. Harrison appeals the district court's denial of his motion for postconviction relief.

## III. ASSIGNMENTS OF ERROR

Harrison asserts, restated, that the district court erred in (1) failing to grant postconviction relief on the grounds asserted and (2) admitting J.J.'s testimony surrounding the nonjuror's comments during the January 9 elevator incident.

## IV. STANDARD OF REVIEW

A defendant requesting postconviction relief must establish the basis for such relief, and the findings of the district court will not be disturbed unless they are clearly erroneous. *State v. Becerra*, 263 Neb. 753, 642 N.W.2d 143 (2002).

## V. ANALYSIS

### 1. Admission of Juror Testimony

We first consider Harrison's second numbered assignment of error. Harrison asserts generally that the district court in this postconviction case erred under § 27-606(2) because the district court allowed J.J. to testify regarding the January 9 elevator incident. Harrison specifically claims that J.J. testified as to the influence upon him which resulted from the January 9 elevator incident and that such testimony is improper under § 27-606(2). As

explained below, the testimony at issue is neither the type of testimony covered nor prohibited by § 27-606(2), and Harrison's assignment of error is without merit.

Section 27-606(2) provides:

> Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith, except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror. Nor may his affidavit or evidence of any statement by him indicating an effect of this kind be received for these purposes.

J.J. testified at the postconviction evidentiary hearing regarding the January 9 elevator incident in which he and other jurors heard an excused juror express her opinion that Harrison was guilty. J.J. also testified regarding his conversation with the trial judge about the incident. J.J. testified that during that conversation, the trial judge asked him whether the excused juror's comments would affect his decision and that he told the trial judge they would not. After J.J. gave this testimony at the postconviction evidentiary hearing, the district court in the postconviction evidentiary hearing asked J.J., "[I]s that what happened? You based your decision on the evidence at the time . . . ." Harrison objected to the district court's question on the basis that § 27-606(2) prohibits a juror from testifying about deliberations. J.J. did not answer the question. The district court indicated that it was "not asking about the deliberations" and then restated its question, and asked, "You stated that you told the judge, at the time, that you were going to base your decision on the evidence. Is that what happened in your . . . case?" J.J. replied, "Yes."

Referring to the above-quoted testimony, Harrison argues that J.J. was impermissibly allowed to testify in the postconviction hearing as to the influence the improper communication actually

had on the deliberations. The State responds that the district court in its reformulated question did not ask J.J. what the effect of the nonjuror's comments were on his decision, but, rather, the district court asked J.J. to reiterate whether or not he had told the trial judge at the time of the trial that he intended to base his decision on the evidence. We agree with the State's reading of the postconviction evidence.

A review of the testimony at issue shows that the substance of the testimony as a whole amounts to a recitation by J.J. stating, as a historical matter, what J.J. had told the trial judge, following which the district court in the postconviction evidentiary hearing asked J.J. to confirm, which he did, that J.J. had told the trial judge that he would base his decision on the evidence. The inquiry in the postconviction hearing referred to predeliberation matters in the trial court. In sum, the testimony by J.J. indicates that J.J. told the trial judge that he remained impartial, and the district court in the postconviction evidentiary hearing verified that J.J. had told the trial judge that he remained impartial prior to deliberations.

The testimony in question regarding J.J.'s predeliberation impartiality was not an inquiry into the validity of the verdict under § 27-606(2). Accordingly, the testimony was not prohibited by § 27-606(2). Instead, the testimony at issue reflects that the trial judge merely inquired as to whether the juror was able to render a fair and impartial verdict prior to deliberation, and recitation of the trial-level colloquy at the postconviction hearing neither implicated nor was prohibited by § 27-606(2).

We have long observed that " 'The retention or rejection of a juror is a matter of discretion for the trial court.' " *State v. LeBron*, 217 Neb. 452, 458, 349 N.W.2d 918, 923 (1984) (quoting *State v. Robinson*, 198 Neb. 785, 255 N.W.2d 835 (1977)). We have approved of a trial court's action in which the trial court examined jurors with respect to their continued impartiality where the jurors have been exposed to a conversation relative to the criminal defendant. *Id.* Similarly, in the instant case, the testimony at the postconviction hearing reporting the trial court's inquiry into J.J.'s continued predeliberation impartiality was not error. Harrison's second assignment of error is without merit.

## 2. DENIAL OF POSTCONVICTION RELIEF

■ We next consider Harrison's first numbered assignment of error in which he asserts that the district court erred in denying postconviction relief on the grounds set forth by Harrison. In a motion for postconviction relief, the defendant must allege facts which, if proved, constitute a denial or violation of his or her rights under the U.S. or Nebraska Constitution, causing the judgment against the defendant to be void or voidable. *State v. Thomas*, 262 Neb. 138, 629 N.W.2d 503 (2001). In his motion for postconviction relief, Harrison alleged facts relating to the three incidents involving communications between a nonjuror and jurors during the course of his trial. Harrison also alleged that, with respect to the January 9 elevator incident, his trial counsel failed to preserve issues related to the incident for appeal and that the same counsel failed to raise the issues on appeal. Harrison essentially argues that these facts establish a denial or violation of his constitutional rights in two respects: (1) the three incidents involving nonjurors and jurors violated his due process and Sixth Amendment rights to trial by an impartial jury and to confrontation and (2) counsel's failures with respect to the January 9 elevator incident deprived him of effective assistance of counsel.

### (a) Denial of Fair Trial: Jury Misconduct

Harrison asserts that each of the three incidents amounts to jury misconduct which denied him a fair trial. We note that in prior case law, this court has used the term "jury misconduct" to refer to at least two distinct types of misconduct: (1) misconduct involving an improper communication between a nonjuror and a juror and (2) misconduct by a member or members of the jury, including predeliberation discussions of the case. Different standards of proof apply to these distinct types of misconduct; therefore, we first note that we consider each of the three incidents in the present case to be misconduct involving an improper communication between a nonjuror and a juror and analyze them accordingly.

The January 8 incident and the January 9 elevator incident clearly fall under the category of nonjuror communications because they involved jurors' hearing the comments of a nonjuror

and there was no indication of a response by or discussion among the jurors. The January 9 hallway incident also involved comments by a nonjuror in the presence of jurors, but there was additional testimony that a juror responded to the nonjuror's comments by saying that he would never think by looking at Harrison that he could be a " 'cold killer.' " As we read the comment by the juror, it reflects that the juror had not decided the issue in the case; the nonjuror comments did not affect the juror and therefore did not amount to a predeliberation discussion or misconduct by the juror as asserted by Harrison. Accordingly, we analyze each of the three incidents as instances of misconduct involving an improper communication between a nonjuror and a juror.

■ A criminal defendant claiming jury misconduct bears the burden of proving, by a preponderance of the evidence, (1) the existence of jury misconduct and (2) that such misconduct was prejudicial to the extent that the defendant was denied a fair trial. *State v. Jackson*, 255 Neb. 68, 582 N.W.2d 317 (1998). We review the district court's decision in this postconviction proceeding under a clearly erroneous standard. See *State v. Becerra*, 263 Neb. 753, 642 N.W.2d 143 (2002).

■ In a criminal case, misconduct involving an improper communication between a nonjuror and a juror gives rise to a rebuttable presumption of prejudice which the State has the burden to overcome. *Jackson, supra.* Extraneous material or information considered by a jury may be deemed prejudicial without proof of actual prejudice if the material or information relates to an issue submitted to the jury and there is a reasonable possibility that the extraneous material or information affected the verdict to the detriment of a litigant. *State v. Williams*, 253 Neb. 111, 568 N.W.2d 246 (1997). The question of whether prejudice resulted from jury misconduct must be resolved by the trial court's drawing reasonable inferences as to the effect of the extraneous information on an average juror. *Id.* The test to determine whether extraneous material was prejudicial looks to the possible effect of the extraneous material on an average juror's deliberative process. *Id.*

We review the district court's determinations regarding Harrison's claims of jury misconduct in light of the above standards. Regarding the factual question whether misconduct

occurred in each of the three incidents alleged by Harrison, it is apparent that the district court found that the three incidents of communication between a nonjuror and jurors occurred because the district court continued the analysis in its order and evaluated whether prejudice resulted from such communications. From our review of the evidence presented at the evidentiary hearing, we determine that the district court's findings that the three incidents occurred were not clearly erroneous.

We next review the district court's determination that the three incidents were not prejudicial to Harrison's defense. We determine that the district court's determination that no prejudice occurred was not clearly erroneous.

Under the standards recited above, once a defendant has established by a preponderance of the evidence that jury misconduct involving improper communications between a nonjuror and a juror has occurred, a rebuttable presumption of prejudice arises which the State has the burden to overcome. The question whether the misconduct was prejudicial to the extent that the defendant was denied a fair and impartial trial is ultimately a question for the trial court and is to be resolved upon the basis of an independent evaluation of all the circumstances in the case and consideration of the effect of the communication on an average juror. *Williams, supra.*

The proper analysis with regard to each incident in the present case is to make an evaluation of all the circumstances to determine whether there was a reasonable possibility that the improper communication affected the jury's verdict. A review of the evidence presented at the evidentiary hearing shows that under all the circumstances at the underlying trial, there was not a reasonable possibility that the nonjuror communications to the jurors affected the verdict and that, therefore, the district court's determination that the three incidents were not prejudicial was not clearly erroneous.

The record shows that the communications at issue consisted mainly of the nonjuror's assertions of her belief that Harrison was guilty and that he was "crazy." The three incidents were pre-deliberation occurrences, and evidence was received subsequent to the incidents. In addition, we observe that prior to the jury's beginning its deliberations, and subsequent to the three incidents,

the trial court instructed the jury that "[i]n determining any questions of fact presented in this case, you should be governed solely by the evidence introduced before you." See *State v. Anderson*, 252 Neb. 675, 564 N.W.2d 581 (1997). It is evident that the average juror would have heeded the trial court's instructions to base his or her decisions on the evidence rather than on a comment by the nonjuror.

In light of all the circumstances, the communications of the nonjuror would not have affected the average juror's decision and there was not a reasonable possibility that the communications by the nonjuror would have affected the jury's verdict. We therefore determine that the district court was not clearly erroneous in determining that no prejudice resulted from the three incidents. We reject Harrison's arguments with regard to jury misconduct and conclude that the district court did not err in dismissing Harrison's claims related to such misconduct.

### (b) Ineffective Assistance of Counsel

Harrison argues that his trial counsel, who also served as his direct appeal counsel, was ineffective for failing to properly raise and preserve issues related to the three incidents. In order to sustain a claim of ineffective assistance of counsel as a violation of the Sixth Amendment to the U.S. Constitution and article I, § 11, of the Nebraska Constitution, a defendant must show that (1) counsel's performance was deficient and (2) such deficient performance prejudiced the defendant, that is, demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different. *State v. Thomas*, 262 Neb. 985, 637 N.W.2d 632 (2002). The two prongs of this test, deficient performance and prejudice, may be addressed in either order. If it is more appropriate to dispose of an ineffectiveness claim due to the lack of sufficient prejudice, that course should be followed. *State v. Thomas*, 262 Neb. 138, 629 N.W.2d 503 (2001).

As we have noted above, the district court was not clearly erroneous in determining that the three incidents did not result in prejudice to Harrison. Because the incidents themselves were not prejudicial, any claimed deficiencies of counsel due to purported failures on the part of counsel to raise, preserve, or

appeal issues related to the incidents did not prejudice Harrison's defense or impact the outcome. We therefore conclude the district court did not err in rejecting Harrison's claim of ineffective assistance of counsel.

## VI. CONCLUSION

Juror J.J.'s testimony was not prohibited by § 27-606(2). The district court did not err in rejecting Harrison's motion for postconviction relief. The district court did not err in rejecting Harrison's claim of ineffective assistance of counsel. We therefore affirm the district court's denial of Harrison's motion for postconviction relief.

AFFIRMED.