IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**


STATE V. BUECHLER


NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).


STATE OF NEBRASKA, APPELLEE,

V.

TRAVIS BUECHLER, APPELLANT.


Filed November 20, 2018.    No. A-17-1218.


Appeal from the District Court for Scotts Bluff County: LEO P. DOBROVOLNY, Judge. Affirmed.

William E. Madelung, of Madelung Law Office, P.C., L.L.O., for appellant.

Douglas J. Peterson, Attorney General, and Melissa R. Vincent for appellee.


MOORE, Chief Judge, and RIEDMANN and WELCH, Judges.

RIEDMANN, Judge.

## INTRODUCTION

Travis Buechler appeals his conviction of possession with intent to manufacture, distribute, deliver, or dispense 64.55 grams of methamphetamine and failing to affix a drug tax stamp to the methamphetamine. During the trial, the district court for Scotts Bluff County denied Buechler's motion for a mistrial on the grounds of attempted jury tampering, which Buechler also appeals. For the reasons set out below, we affirm.

## BACKGROUND

Buechler was charged by information with one count of knowingly and intentionally possessing with intent to manufacture, distribute, deliver, or dispense a controlled substance under Neb. Rev. Stat. 28-416(1) (Reissue 2016); one count of failing to affix a drug stamp to a controlled substance under Neb. Rev. Stat. § 77-4303 (Reissue 2009); and one count of forfeiture of $224

- 1 -

found in Buechler's possession when he was arrested. After trial Buechler was found guilty on all counts and was sentenced to a minimum of 10 years' and a maximum of 20 years' imprisonment on count I, and 2 years' imprisonment on count II, to be served concurrently.

On March 15, 2017, Scottsbluff Police Officer William Howton observed the driver of an SUV pull into a gas station, exit his vehicle, and approach Buechler who was seated in his truck at the gas station. The driver sat in Buechler's truck for a short time, then returned to his own vehicle for a brief period, before again getting in Buechler's vehicle. Howton informed fellow Scottsbluff Police Officer Zach Rada of what he observed, and Rada stopped Buechler's vehicle a short distance away from the gas station. When Rada made contact with Buechler, he observed a digital scale sitting in plain view on the front seat of Buechler's vehicle.

Howton then approached Buechler and asked to see the digital scale, on which he observed white residue. Howton and Rada searched Buechler and his vehicle, finding two empty plastic baggies and cash in Buechler's pockets. Two empty baggies were found between the driver's seat and center console of Buechler's vehicle. A baggie containing what appeared to be methamphetamine was found inside a pocket of a brown leather jacket laying behind the center console. Buechler was subsequently arrested and placed in Rada's vehicle where he appeared agitated and stated, "Fuckin' Doug" (the first name of the driver Rada observed at the gas station). Later, while at the county detention center, Buechler called his mother and stated during the call, "[I]f I can't get a job, what--what else can I do to support myself?" The baggie containing methamphetamine was sent to a crime lab, where it was tested and found to be 64.55 grams of methamphetamine.

During trial, Buechler presented evidence that the vehicle he was driving at the time of his arrest was registered to another individual, and that Buechler was only test driving it. Buechler also presented testimony that he worked for Joseph Thortsen, who buys and sells vehicles, and Buechler had received the vehicle to test drive from him. Finally, Buechler presented evidence that he did not own a brown leather jacket.

Following the first day of the trial, Thortsen and another individual were handing flyers to jurors in the parking lot outside the courthouse. The flyer referenced jury nullification and contained a link to a website for jurors to visit regarding their responsibility as members of a jury. One of the jurors brought Thortsen's activities to the attention of the district court after she saw Thortsen sitting with Buechler and Buechler's wife during a recess on the second day of the trial. She told the court that she accepted a flyer, but did not read it and disposed of it when she got home. After a discussion with counsel from both parties, the district court decided to discharge her from the jury.

The district court questioned each of the remaining members of the jury to determine if they had received a flyer from Thortsen, and whether they saw him with Buechler at the courthouse. Five jurors indicated that they were either approached in the parking lot by Thortsen or saw two men handing out flyers to jurors as they were leaving. Of those five, none read the flyer, and none saw Thortsen with Buechler during the next day of the trial. Moreover, the district court asked each juror if they would be able to remain fair and impartial throughout the trial, and each juror stated affirmatively that he or she could do so.

Buechler moved for a mistrial following the district court's questioning of the jurors. He argued that the contact Thortsen had with jurors was improper, the jurors likely knew what

occurred was abnormal, and knew that Thortsen was associated with Buechler. The district court denied the motion, and the trial continued, ending in Buechler's conviction on counts I and II. Buechler now appeals.

## ASSIGNMENTS OF ERROR

Restated, Buechler assigns that the district court abused its discretion by not granting his motion for a mistrial based on attempted jury tampering, and that there was insufficient evidence to support his conviction.

## STANDARD OF REVIEW

Decisions regarding motions for mistrial are directed to the discretion of the trial court, and will be upheld in the absence of an abuse of discretion. *State v. Grant*, 293 Neb. 163, 876 N.W.2d 639 (2016). An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and the evidence. *State v. Hunt*, 299 Neb. 573, 909 N.W.2d 363 (2018). A trial court's ultimate determination whether the defendant was prejudiced by juror misconduct is reviewed de novo. *State v. Thorpe*, 280 Neb. 11, 783 N.W.2d 749 (2010).

In reviewing a sufficiency of the evidence claim, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: an appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, determine the plausibility of explanations, or reweigh the evidence; such matters are for the finder of fact. *State v. Rocha*, 295 Neb. 716, 890 N.W.2d 178 (2017). The relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id*.

## ANALYSIS

*Request for Mistrial.*

In his first assignment of error, Buechler argues that the district court abused its discretion in not granting his motion for a mistrial after it discovered that Thortsen handed, or attempted to hand, flyers referencing jury nullification to jurors empaneled in Buechler's case. We disagree.

Decisions regarding motions for mistrial are directed to the discretion of the trial court, and will be upheld in the absence of an abuse of discretion. *State v. Grant, supra*. A mistrial is properly granted in a criminal case where an event occurs during the course of a trial which is of such a nature that its damaging effect cannot be removed by proper admonition or instruction to the jury and thus prevents a fair trial. *Id*. A defendant faces a higher threshold than merely showing a possibility of prejudice when attempting to prove error predicated on the failure to grant a mistrial. *Id*. Instead, the defendant must prove the alleged error actually prejudiced him or her, rather than creating only the possibility of prejudice. *Id*.

Here, Buechler argues that the district court abused its discretion by denying his motion for a mistrial based on Thortsen's contact with jurors in the courthouse parking lot. To determine if the district court erred in denying Buechler's motion, we first must determine whether Thortsen's contact with the jurors resulted in juror misconduct, and if it did, whether Buechler was prejudiced by the misconduct. The Nebraska Supreme Court has used the term "jury misconduct" to refer to

two distinct types of misconduct: (1) misconduct involving an improper communication between a nonjuror and a juror and (2) misconduct by member of the jury, including predeliberation discussions of the case. *State v. Harrison*, 264 Neb. 727, 651 N.W.2d 571 (2002). Here, Buechler's allegation of jury tampering by Thortsen falls under improper communication between a nonjuror and a juror.

A criminal defendant claiming jury misconduct bears the burden of proving, by a preponderance of the evidence, (1) the existence of jury misconduct; and (2) that such misconduct was prejudicial to the extent that the defendant was denied a fair trial. *State v. Thorpe, supra*. In a criminal case, misconduct involving an improper communication between a nonjuror and a juror gives rise to a rebuttable presumption of prejudice which the State has the burden to overcome. *Id*. Extraneous material or information considered by a jury can be prejudicial without proof of actual prejudice if (1) the material or information relates to an issue submitted to the jury and (2) there is a reasonable possibility that it affected the jury's verdict to the challenger's prejudice. *Id*. Whether prejudice resulted from jury misconduct must be resolved by the trial court's drawing reasonable inferences as to the effect of the extraneous information on an average juror. *Id*. Jury tampering occurs when a person, with the intent to influence a juror's vote or opinion, attempts directly or indirectly to communicate with a juror. Neb. Rev. Stat. § 28-919(2) (Reissue 2016).

Upon our de novo review of the record, we find that the district court did not abuse its discretion in denying Buechler's motion for a mistrial. There was no evidence which demonstrated that any juror received extraneous information about the specifics of Buechler's case. The record indicates that Thortsen was passing out flyers regarding jury nullification in general, not particular to Buechler's case. Further, the juror brought Thortsen's activities to the attention of the district court only after seeing him sit with Buechler during a trial recess the next day. The district court, and counsel for each party, questioned her about the flyer and her recognition of Thortsen, and ultimately discharged her as a juror.

The district court then questioned the remaining members of the jury to discern whether they had received a similar flyer. While five other jurors indicated that they were approached by two men handing out flyers in the parking lot, none indicated that they read the flyer or communicated with the men in any way. The record indicates that there was not any improper communication or juror misconduct following Thortsen's attempted contact with jurors.

Moreover, even if we were to assume that there was juror misconduct, Buechler was not in any way prejudiced by Thortsen's contact and attempted contact with the empaneled jurors. The district court acted promptly and appropriately to ensure that jurors were not improperly influenced after discovering that Thortsen attempted to distribute flyers to them. The district court questioned the jurors on whether they could remain fair and impartial throughout the trial, and the jurors indicated that they could. The district court instructed the jurors not to discuss the topic of their individual meeting with the court, thus ensuring that the jurors would not discuss the flyers or Thortsen among themselves. Moreover, the district court removed the one juror who connected Thortsen with Buechler. Buechler's right to a fair trial was not impacted by Thortsen handing out the flyers and the court did not abuse its discretion in denying the motion for mistrial.

*Sufficiency of Evidence.*

In his second assignment of error, Buechler argues that there was insufficient evidence to convict him of knowingly possessing 64.55 grams methamphetamine with intent to manufacture, distribute, deliver, or dispense under § 28-416(10)(b). We disagree.

Section 28-416(10)(b) makes it a Class IC felony to knowingly or intentionally possess at least 28 grams but less than 148 grams of methamphetamine. A person possesses a controlled substance when he or she knows of the nature or character of the substance and of its presence and has dominion and control over it. *State v. Rocha, supra.* Possession can be either actual or constructive, and constructive possession of an illegal substance may be proved by direct or circumstantial evidence. *Id.* To be guilty, the defendant must possess the controlled substance knowingly and intentionally. Knowledge, like intent, may be inferred from the circumstances surrounding the act. *State v. Almasaudi*, 282 Neb. 162, 802 N.W.2d 110 (2011). See, also, *State v. Coca*, 216 Neb. 76, 341 N.W.2d 606 (1983).

Buechler did not have actual possession of the methamphetamine so the question before us is whether there is sufficient evidence from which a trier of fact could reasonably infer that he was in constructive possession, i.e., that he was aware of the presence of the methamphetamine and had dominion and control over it. See *State v. Howard*, 282 Neb. 352, 803 N.W.2d 450 (2011); *State v. Campbell*, 24 Neb. App. 861, 900 N.W.2d 556 (2017). Mere presence at a place where a controlled substance is found is not sufficient to show constructive possession. *State v. Howard, supra*. Instead the evidence must show facts and circumstances which affirmatively link Buechler to the methamphetamine so as to suggest that he knew of it and exercised control over it. *Id.* The fact that one is the driver of a vehicle, particularly over a long period of time, creates an inference of control over items in the vehicle. *Id.*

Here, there was sufficient evidence to convict Buechler of knowingly possessing methamphetamine with intent to manufacture, distribute, deliver, or dispense. The evidence against Buechler includes: Howton's observations of the interaction between Buechler and the other driver at the gas station; the digital scale with methamphetamine residue; the baggies found in Buechler's pockets and his vehicle, as well as the baggie containing methamphetamine found in the jacket; and Buechler's incriminating statements made in Rada's vehicle and at the detention center. The baggies all were of the same size and style. The digital scale was sitting in plain view on the seat next to Buechler. The jacket in which the drugs were found was within reaching distance of Buechler. Most importantly, Buechler was the sole driver and occupant of the vehicle in which the drugs were found. Each of the aforementioned pieces of evidence indicates that Buechler had dominion and control over the methamphetamine. While Buechler presented his own evidence regarding the ownership of the vehicle and jacket, the jury's guilty verdict makes it clear that they found the prosecution's evidence to be more credible.

When reviewing a criminal conviction for sufficiency of the evidence to sustain the conviction, the relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Campbell, supra*. An appellate court does not determine the plausibility of explanations or reweigh the evidence weighed by the trier of fact. *Id.* An appellate court simply determines whether the evidence that was accepted by the

trier of fact is sufficient beyond a reasonable doubt to convict the defendant. *Id*. We conclude that the evidence was sufficient to convict Buechler.

Because there was sufficient evidence to convict Buechler of possession of methamphetamine, there was also sufficient evidence to convict Buechler of failing to affix a drug tax stamp on the methamphetamine as required by § 77-4303. Under Neb. Rev. Stat. § 77-4302 (Reissue 2009), no dealer may possess controlled substances upon which a tax is imposed under § 77-4303 unless the tax has been paid on the controlled substance, as evidenced by an official stamp or label. Neb. Rev. Stat. § 77-4301 (Reissue 2009) defines a dealer as any person who possesses seven or more grams of any controlled substances which is sold by weight. Finally, under § 77-4303, a tax is imposed on controlled substances at the rate of $150 per each gram. § 77-4303(1)(b).

Here, Buechler possessed 64.55 grams of methamphetamine. Both Howton and Rada testified there was not a drug tax stamp attached to the methamphetamine found in the vehicle. Therefore, the evidence was sufficient to support a conviction for violation of § 77-4303.

## CONCLUSION

The district court did not abuse its discretion in denying Buechler's motion for a mistrial. Further, there was sufficient evidence to convict Buechler of possession with intent to manufacture, distribute, deliver, or dispense methamphetamine under § 28-416(10)(b) and of failing to affix a drug stamp on the methamphetamine under § 77-4303. We therefore affirm.

AFFIRMED.