IN THE NEBRASKA COURT OF APPEALS

## MEMORANDUM OPINION AND JUDGMENT ON APPEAL
### (Memorandum Web Opinion)

STATE V. SVOBODA

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

CHAD L. SVOBODA, APPELLANT.

Filed May 17, 2022.    No. A-21-700.

Appeal from the District Court for Lancaster County: RYAN S. POST, Judge, on appeal thereto from the County Court for Lancaster County: MATT L. ACTON, Judge. Judgment of District Court affirmed.

Joe Nigro, Lancaster County Public Defender, and James Sieben for appellant.

Douglas J. Peterson, Attorney General, and Matthew Lewis for appellee.

MOORE, RIEDMANN, and ARTERBURN, Judges.

MOORE, Judge.

## I. INTRODUCTION

Chad L. Svoboda appeals from an order of the Lancaster County District Court affirming his conviction and sentence in the county court for Lancaster County for second offense theft. On appeal to this court, Svoboda claims that the county court should have granted his motion for mistrial, that the evidence was insufficient to support his conviction, that he received an excessive sentence, and that he received ineffective assistance from his trial counsel. We affirm.

## II. STATEMENT OF FACTS

### 1. CHARGES

On September 9, 2020, the State filed a complaint in the county court, charging Svoboda with one count of theft by unlawful taking, $500 or less, second offense, in violation of Neb. Rev.

Stat. § 28-511 (Reissue 2016), a Class I misdemeanor. See Neb. Rev. Stat. § 28-518(6) (Reissue 2016). Specifically, the State alleged that on August 7, Svoboda took or exercised control over movable property belonging to Peter Oblender, valued at $500 or less, with the intent to deprive Oblender of that property. The State alleged that Svoboda had a previous theft conviction in Merrick County, Nebraska from June 2004.

## 2. TRIAL

### (a) Jury Selection and Opening Statements

Svoboda's jury trial began in the county court on February 3, 2021. Prior to jury selection, the court advised Svoboda of his right to have the jury sequestered. Svoboda affirmed his understanding of the court's advisement; that no one had made him any promises or threatened him in any way to get him to waive that right; and that he was waiving that right freely, voluntarily, knowingly, and intelligently. The court accepted Svoboda's waiver of his right to have the jurors sequestered, and the trial proceeded with jury selection.

After the jury, including one alternate juror, was impaneled and sworn, the county court gave introductory instructions to the jury, including an admonition to avoid finding outside information about the case or talking to anyone, even the other jurors, about the case. The court's admonishment included a specific instruction to not pay attention to any news reports regarding the case.

The parties then gave brief opening statements before the trial recessed for the day. Prior to opening statements, the county court instructed the jury that the attorney's statements are not evidence. In Svoboda's opening statement, his attorney thanked the jury and then stated:

> My job here today is to make sure the State does their job, make sure that they provide you the evidence necessary, and they meet the burden before any determination of guilt is made for my client. My job is to make sure the evidence is admitted properly, and nothing improper is before you. I would ask that you do your job, a very important job here today. Most importantly is that you presume my client is innocent. You start with that presumption and you hold it to the end of this trial. You listen to all of the evidence before determining innocence or guilt. That's the important part of what I'm asking you to do, and I'm appreciative for you.
>
> With that, I would submit it.

Before recessing for the day, the county court again admonished the jury to avoid talking about or researching the case.

### (b) Motions for Competency and Mistrial

At some point after trial recessed on February 3, 2021, Svoboda was taken into custody on an unrelated burglary charge. On February 4, outside the presence of the jury, the county court informed the parties' attorneys of a report from jail staff that Svoboda was in custody and uncooperative. Svoboda's attorney was allowed contact with him in the "jail staging area," and she reported to the court that Svoboda was not intoxicated, but was "extremely agitated," "still on suicide watch," "[had] had no contact with his wife and not been able to get regular plain clothing," but that he might be willing to change into some clothing that jail staff had obtained. A deputy

reported that Svoboda was "very agitated," his behavior was "probably escalating," and that he would "probably be verbal in the courtroom." The deputy further reported that Svoboda was angry with staff in the jail and "angry with the whole procedure here." Svoboda's attorney requested a continuance, which was granted by the court. The jurors were brought into the courtroom, and the court explained, "There are a couple of things that . . . leave us unable to proceed at this point in time." The court continued trial to the afternoon of February 5. Prior to recessing, the court advised the jurors that the "[s]ame admonitions apply."

On February 5, 2021, Svoboda's attorney filed a motion to determine Svoboda's competency based on his behavior the day before. Svoboda's attorney subsequently withdrew the motion to determine competency after being given an opportunity to meet with him. She informed the court, outside the presence of the jury, that while she still had some concerns, she thought that Svoboda understood the nature of the proceedings.

The county court also questioned Svoboda outside the presence of the jury about his ability to understand the proceedings and his recent controlled substance use. Svoboda admitted to using methamphetamine on the morning of February 3, 2021, before trial started. He stated that the drugs had influenced him for about half a day and that he had not used any controlled substances or alcohol since that time. Svoboda further stated that his uncooperativeness with the jail staff had not been due to his methamphetamine use; but rather, that he had been upset and unable to contact his wife. The court found that Svoboda was no longer under the influence and that he understood the proceedings. When the court asked if he was ready to continue with his trial, Svoboda confirmed, stating "sure."

Svoboda's attorney then made an oral motion for mistrial based on the fact that local news outlets had reported Svoboda's arrest after the first day of trial. The news coverage had included a mug shot of Svoboda, and his attorney noted that in comments to posts about the arrest on the social media pages for local new outlets, Svoboda's "full criminal history is detailed, as well as suspected drug use and other personal information."

In connection with the motion for mistrial, the county court spoke to the jurors individually, asking them each (1) whether they had seen, read, or heard anything about Svoboda since court recessed on February 3, 2021, and (2) whether they had formed or expressed an opinion regarding the guilt or innocence of Svoboda. All jurors except one answered in the negative to these questions; the juror who responded affirmatively to the first question stated that she had read the title of an article published in the newspaper. When asked what she recalled of the article, she replied that "somebody broke into [a business], broke a window, took some things, and that's it." She also recalled that the individual referenced in the article was Svoboda. In response to further questioning by the court, this juror stated she understood that Svoboda was still presumed innocent, that she had not mentioned what she read to any of the other jurors, and that she had not formed an opinion about Svoboda's guilt or innocence on the charge in question. We note that at the conclusion of the questioning of each individual juror, the court instructed each juror not to mention the questions to the other jurors. After the jurors were all questioned, Svoboda's attorney renewed the motion for mistrial, which the court overruled. A copy of the newspaper containing the article about the arrest was received by the court as an exhibit "for purposes of the record on appeal." The trial then proceeded with the presentation of evidence.

(c) Evidence

The State presented testimony from the victim, the manager of the hotel where the victim was staying, and a police officer who investigated the theft. We note that prior to the testimony of each witness, the court instructed each of the witnesses that they could remove their face mask if they felt comfortable doing so or that they could choose to remain masked. The record shows that the victim chose to remain masked. The hotel manager did not state her choice on the record when she took the stand, but at one point during her testimony, she stated that she had lowered her mask after an unidentified speaker stated that it was difficult to hear her testimony. There is nothing in the record to indicate the police officer's masking choice.

*(i) Victim's Testimony*

The victim, Oblender, testified that he was staying at a hotel in Lincoln on August 7, 2020, and awoke to the sound of his hotel room door opening. Oblender initially assumed "it was just a maid or something," but he later realized that his black leather wallet was missing from his room. He reported the incident to the Lincoln Police Department and the hotel manager, Mona Temple. According to Oblender, his wallet contained around $40 or $50 and various debit and identity cards, including his "common access card for the military." Oblender had part-time employment with the Air National Guard, and he testified that the common access card was "how [he] got on base." He estimated that the value of the wallet and the money inside was "probably $60-ish, $70-ish" and testified that "it was a decent amount of work to get a military ID back in possession." The wallet was never returned to Oblender.

*(ii) Hotel Manager's Testimony*

Temple testified that the hotel is equipped with a surveillance system, which records everything that happens in the hallways, including when hotel guests enter and exit their rooms. Temple stated that after receiving Oblender's report, she and Investigator Jason Adams of the Lincoln Police Department reviewed the hotel's surveillance video footage from the morning of August 7, 2020, for the period between 6 and 8 a.m. Temple observed Svoboda on the video outside of Oblender's hotel room, looking around and then entering and exiting the room multiple times before going down the hall and into his own hotel room. She denied seeing anything in Svoboda's hands when he entered and exited Oblender's hotel room. Temple identified Svoboda in the courtroom as the individual she had seen on the video. According to Temple, the surveillance video that she and Adams viewed on August 7 was no longer available because the videos are only stored for 9 days before being automatically deleted by the system.

*(iii)* Jackson v. Denno *Hearing*

Next, a hearing on the voluntariness of Svoboda's statements to law enforcement about the wallet was held outside the presence of the jury pursuant to *Jackson v. Denno*, 378 U.S. 368, 84 S. Ct. 1774, 12 L. Ed. 2d 908 (1964). Before the jury left the courtroom, the county court again admonished the jurors to not talk about the case with one another or anyone else; to not conduct their own research; to not listen to any conversation; to not read, watch, or listen to any reports; to not go near any of the locations mentioned; and to not form or express any opinion.

- 4 -

During the hearing, Adams testified that he contacted Svoboda in his hotel room on the date in question. Adams' initial contact was with Svoboda's wife (Svoboda was in the bathroom for about 10 minutes before coming out and speaking to Adams). When Svoboda came out of the bathroom, Adams identified himself as a police officer, told Svoboda that he was "investigating what appeared to be a theft or the disappearance of an item from another [hotel] room," and that he had observed surveillance footage from inside the hotel showing Svoboda enter and leave the other hotel room. Adams testified that, after several denials, Svoboda admitted taking Oblender's wallet and its contents into his room and then destroying the items before flushing them down the toilet. Adams denied threatening, coercing, or forcing Svoboda to speak to him; testified that Svoboda did not appear to be under the influence of drugs or alcohol at the time they spoke; and stated that Svoboda never asked or attempted to leave or refused to cooperate. Adams testified that Svoboda did tell him that he had been sick. Adams' contact with Svoboda lasted for about 30 or 40 minutes. Adams stood in the doorway of the hotel room to converse with Svoboda, who was sitting down in the room; another police officer was standing behind Svoboda.

Svoboda also testified during the hearing, stating that he had used methamphetamine on the morning of the day in question and that when he told Adams that he had flushed the wallet down the toilet he had simply "told [Adams] what he wanted to hear."

The county court found Svoboda's statements to officers on August 7, 2020 were freely and voluntarily made.

### (iv) Police Officer's Testimony

After the jury returned to the courtroom, Adams testified that he responded to the hotel on August 7, 2020, "to make contact with someone who wanted to report a larceny." Adams described speaking to Oblender, who reported his wallet missing, as well as to hotel management and then viewing the hotel's recorded security footage. Adams concluded that someone had been in Oblender's hotel room and identified that individual as Svoboda, another hotel guest. Adams testified about his contact with Svoboda, consistent with the hearing testimony set forth above. Additionally, Adams testified that another officer found "a pull tab from a zipper . . . that was part of the wallet" in the bathroom of Svoboda's room. According to Adams, while he was speaking to Svoboda, the other officer went to his police cruiser to call Oblender, who confirmed that the zipper pull tab the officer located "potentially was part of [his wallet]."

Adams identified exhibit 2 as a copy of the body camera footage recorded during his interaction with Svoboda. The county court received that exhibit into evidence, and the video was played for the jury. After the video was played, Adams testified that he was able to confirm that the individual portrayed in the video was Svoboda by comparing his physical presence to a DMV photograph located through a mobile data computer in the police cruiser.

On cross-examination, Adams confirmed that Svoboda denied taking the wallet several times. When asked if he ever saw the wallet, he replied, "Just through the surveillance."

### (v) Parties Rest and Case Submitted

After Adams' testimony, the State rested. Svoboda's attorney made a motion to dismiss, which the county court overruled. Svoboda then rested without testifying or offering any other evidence.

Following closing arguments and jury instructions, the county court submitted the case to the jury for deliberations. We note that the alternate juror (the juror who had read the title of an article published in the newspaper about Svoboda's subsequent arrest) was dismissed and did not participate in deliberations.

### (d) Verdict

The county court submitted the case to the jury at 4:25 p.m. on February 5, 2021, and the jury returned to the courtroom with a verdict at 5:17 p.m. The jury found Svoboda guilty of theft by unlawful taking, $0-$500, and valued the stolen property at $130, and the court accepted the jury's verdict.

### (e) Enhancement and Sentencing

Prior to sentencing, the State filed a motion to amend the complaint to correct the date and case number of Svoboda's prior conviction, which was granted. The amended complaint alleged that Svoboda had a prior theft conviction in Hall County in September 2007. At the enhancement and sentencing hearing on February 26, 2021, the prosecutor announced her belief that Svoboda would be "stipulating that there is a valid prior for purposes of enhancement, and that he effectively waived counsel." Upon inquiry by the county court the prosecutor affirmed that Svoboda had "waived counsel at all critical stages [in the prior case]." The response of Svoboda's attorney to the same inquiry is marked as "[i]ndiscernable" in the bill of exceptions from the hearing, but his attorney did confirm that she "join[ed] in that stipulation." Svoboda was present for the hearing and did not comment or raise any objection to the stipulation. The court accepted the stipulation and found Svoboda guilty of second offense theft.

During the sentencing portion of the hearing, the county court heard arguments from the parties' attorneys and received into evidence a letter from Svoboda's wife regarding sentencing. During the State's argument, the prosecutor recited Svoboda's prior criminal history. Svoboda was given the opportunity to speak, and he "apologize[d] to everybody" for his "behavior." The court sentenced Svoboda to 365 days' incarceration. At the conclusion of the hearing, Svoboda stated, "I didn't know anything about a stipulation. Nobody told me about that." The court instructed Svoboda to talk to his attorney, and the proceedings were concluded.

### 3. APPEAL TO DISTRICT COURT

Svoboda initially filed a pro se notice of appeal to the district court, as well as a motion requesting the appointment of new counsel based on the alleged ineffective assistance of his trial counsel. His trial attorney also filed a motion requesting substitute counsel for Svoboda on appeal. The county court granted the motion for substitute counsel and appointed new counsel for the appeal. Another notice of appeal was subsequently filed by Svoboda's appellate counsel.

At the hearing before the district court on July 1, 2021, the court received as exhibits the transcript of pleadings and the bill of exceptions from the county court proceedings, including the newspaper and body camera footage received at trial. The court then heard argument from the parties.

The record on appeal does not include any statement of errors filed by Svoboda in connection with his appeal to the district court, but the district court's detailed order ruling on his

appeal clearly shows what issues were considered by the district court. The court rejected Svoboda's arguments that the county court should have granted his motion for mistrial, that there was insufficient evidence to sustain his conviction, and that the county court had imposed an excessive sentence. The court also rejected Svoboda's claims of ineffective assistance of trial counsel. Accordingly, it affirmed his conviction and sentence. We have set forth the details of the court's analysis as necessary below.

Svoboda subsequently perfected his appeal to this court.

## III. ASSIGNMENTS OF ERROR

Svoboda asserts, reordered and restated, that the district court erred by (1) affirming the county court's denial of his motion for mistrial, (2) finding the evidence sufficient to affirm his conviction for theft, (3) affirming the excessive sentence imposed by the county court, and (4) failing to find that he received ineffective assistance of counsel in the county court because he was prejudiced by his trial counsel's deficient performance in (a) giving an opening statement that did not relay any facts or assert that Svoboda was not guilty, (b) not asking jurors any relevant questions to support Svoboda's motion for mistrial when given the opportunity to do so, (c) failing to make an additional motion for mistrial after it was determined that Svoboda was under the influence at the start of trial and had waived rights while under the influence, (d) failing to ask the county court to order witnesses to remove their face masks while testifying, (e) failing to make proper and timely objections when warranted, specifically objections that the State was leading a witness and that several answers were speculative, (f) failing to file or make any oral motions to move corrections staff from being seated near Svoboda during trial, and (g) improperly stipulating to the validity of a prior offense before sentencing without consulting Svoboda, advising Svoboda on how to proceed, or getting permission from Svoboda first.

## IV. STANDARD OF REVIEW

In an appeal of a criminal case from the county court, the district court sits as an intermediate court of appeals. *State v. Grant*, 310 Neb. 700, 968 N.W.2d 837 (2022). Both the district court and a higher appellate court generally review appeals from the county court for error appearing on the record. *Id.* When reviewing a judgment for errors appearing on the record, an appellate court's inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. *Id.*

In this case, we are unable to determine from the record on appeal whether Svoboda filed a statement of errors as required by Neb. Ct. R. § 6-1518. In cases where no statement of errors was filed and the district court reviewed for plain error, the higher appellate court likewise reviews for plain error only. *TransCanada Keystone Pipeline v. Tanderup*, 305 Neb. 493, 941 N.W.2d 145 (2020). However, when an appellant fails to file a statement of errors in the district court, an appellate court may at its discretion consider errors assigned in the appellate court, provided that the record shows that those errors were also assigned in the district court. *State v. Zimmerman*, 19 Neb. App. 451, 810 N.W.2d 167 (2012). See, also, *State v. Scherbarth*, 24 Neb. App. 897, 900 N.W.2d 213 (2017) (despite failure to file particular statement of error in district court, higher appellate court may still consider errors actually considered by district court).

As noted above, a review of the record shows that the district court considered the errors Svoboda claimed were committed by the county court. Accordingly, we elect to consider the four assignments of error identified above as they were specifically assigned and specifically argued to this court and are either claimed county court errors considered by the district court or claimed errors by the district court with respect to the proceedings in district court.

Decisions regarding motions for mistrial are directed to the discretion of the trial court and will be upheld in the absence of an abuse of discretion. *State v. Madren*, 308 Neb. 443, 954 N.W.2d 881 (2021). An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *Id.*

Regardless of whether the evidence is direct, circumstantial, or a combination thereof, and regardless of whether the issue is labeled as a failure to direct a verdict, insufficiency of the evidence, or failure to prove a prima facie case, the standard is the same: In reviewing a criminal conviction, an appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact, and a conviction will be affirmed, in the absence of prejudicial error, if the evidence admitted at trial, viewed and construed most favorably to the State, is sufficient to support the conviction. *State v. Hassan*, 309 Neb. 644, 962 N.W.2d 210 (2021).

Absent an abuse of discretion by the trial court, an appellate court will not disturb a sentence imposed within the statutory limits. *State v. Grant*, 310 Neb. 700, 968 N.W.2d 837 (2022).

Whether a claim of ineffective assistance of trial counsel can be determined on direct appeal presents a question of law, which turns upon the sufficiency of the record to address the claim without an evidentiary hearing or whether the claim rests solely on the interpretation of a statute or constitutional requirement. *State v. Drake*, 311 Neb. 219, 971 N.W.2d 759 (2022). In reviewing claims of ineffective assistance of counsel on direct appeal, an appellate court decides only whether the undisputed facts contained within the record are sufficient to conclusively determine whether counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance. *Id.*

V. ANALYSIS

1. MOTION FOR MISTRIAL

Svoboda asserts that the district court erred by affirming the county court's denial of his motion for mistrial. He argues that the jury was tainted because of the alternate juror's admission to reading a newspaper article regarding Svoboda's arrest for an unrelated burglary and that in order to preserve his right to a fair and impartial jury, his motion for mistrial should have been granted.

A mistrial is properly granted in a criminal case where an event occurs during the course of trial which is of such a nature that its damaging effect cannot be removed by proper admonition or instruction to the jury and thus prevents a fair trial. *State v. Figures*, 308 Neb. 801, 957 N.W.2d 161 (2021). Error cannot ordinarily be predicated on the failure to grant a mistrial if an objection or motion to strike the improper material is sustained and the jury is admonished to disregard such material. *State v. Briggs*, 303 Neb. 352, 929 N.W.2d 65 (2019). The defendant must prove that the

alleged error actually prejudiced him or her, rather than creating only the possibility of prejudice. *Id.* Extraneous material or information considered by a jury can be prejudicial without proof of actual prejudice if (1) the material or information relates to an issue submitted to the jury and (2) there is a reasonable possibility that it affected the jury's verdict to the challenger's prejudice. *State v. McSwine*, 24 Neb. App. 453, 890 N.W.2d 518 (2017).

In this case, the county court questioned each juror individually about any exposure to the news coverage in question. Only one individual acknowledged reading anything about Svoboda's arrest on the unrelated burglary charge, and she stated that she had not formed an opinion as to Svoboda's guilt or innocence in this case. She indicated that she had not shared the information with any of the other jurors and agreed not to use any of the information from the article during deliberations. This individual was the alternate juror, was dismissed at the conclusion of trial, and did not participate in the jury's deliberations. The county court admonished the jury multiple times throughout the trial not to read anything about the case or talk to any of the other jurors about the case until deliberations. "An admonishment of the jury is typically sufficient to cure any prejudice." *State v. Davis*, 290 Neb. 826, 834, 862 N.W.2d 731, 737 (2015). Further, absent evidence to the contrary, it is presumed that a jury followed the instructions given in arriving at its verdict. *State v. Henderson*, 301 Neb. 633, 920 N.W.2d 246 (2018).

Svoboda cannot show that he was prejudiced by the media coverage of his arrest after the start of trial. There is nothing in the record to suggest that any juror other than the alternate juror was exposed to the news coverage or that the news coverage influenced the outcome of the case. The alternate juror did not participate in deliberations and there is no indication that the alternate or any of the other jurors failed to follow the county court's instructions. There is nothing to show that the alternate juror's exposure to a newspaper article about Svoboda's arrest for an unrelated burglary influenced the jury so as to taint the outcome of the case. The district court did not err in affirming the county court's denial of Svoboda's motion for mistrial. To the extent that Svoboda's arguments go to one of his claims of ineffective assistance of trial counsel, we have addressed those arguments further below.

### 2. SUFFICIENCY OF EVIDENCE

Svoboda asserts that the district court erred by finding the evidence sufficient to affirm his conviction for theft. He challenges the sufficiency of the evidence regarding the theft and the value of the items allegedly stolen. He also challenges the admissibility of his statements to law enforcement.

"A person is guilty of theft if he or she takes, or exercises control over, movable property of another with the intent to deprive him or her thereof." § 28-511(1). Oblender testified that on the morning of August 7, 2020, he woke to the sound of someone entering his hotel room, after which he discovered that his wallet was missing. The wallet was never returned to Oblender. Both the hotel manager and law enforcement observed hotel surveillance footage showing Svoboda entering and exiting Oblender's room multiple times on the morning in question before returning to his own hotel room. Svoboda later told law enforcement that he took the wallet, destroyed it, and flushed it down the toilet in his room. A portion of the wallet was recovered from the bathroom of Svoboda's hotel room. Body camera footage of Svoboda's statements to police was played for the jury.

Svoboda also challenges the jury's valuation of the wallet and its contents at $130. He was charged with committing a theft of property valued at $500 or less, which is classified as a Class I misdemeanor. § 28-518(6). Oblender testified that his wallet contained around $40 or $50 and various debit and identity cards, including his military identification card. He valued the wallet and its contents at $60 to $70 and testified that replacing the military identification involved a significant amount of work. The jury valued the items at $130, which is within the $0 to $500 grade of offense with which Svoboda was charged.

Section 28-518(8) provides that "[i]n any prosecution for theft under sections 28-509 to 28-518, value shall be an essential element of the offense that must be proved beyond a reasonable doubt." However, although § 28-518(8) requires some value to be proved as an element of a theft offense, the statutory language does not require proof of a particular threshold value. *State v. Duncan*, 294 Neb. 162, 882 N.W.2d 650 (2016). The owner of chattels may testify as to their value in a criminal case. *State v. Dixon*, 306 Neb. 853, 947 N.W.2d 563 (2020). An item's market value at the time of the theft may be established by either direct or circumstantial evidence, and it presents a question of fact to be resolved by the fact finder. *Id*. When a fact finder determines the value of property in a theft case, an appellate court will not set aside the finding unless it is clearly erroneous. *Id*.

Svoboda's arguments about the sufficiency of the evidence on appeal involve the credibility of various witnesses and the weight of certain evidence. An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence, which matters are for the finder of fact. See *State v. Hassan*, 309 Neb. 644, 962 N.W.2d 210 (2021). There was sufficient evidence from which the jury could reasonably conclude that Svoboda had stolen Oblender's wallet. And, we conclude, as did the district court, that Oblender's testimony was sufficient to support the jury's finding regarding the value of the stolen items for purposes of § 28-518(8). In sum, the district court did not err in finding the evidence sufficient to support Svoboda's conviction.

In connection with his sufficiency of the evidence assignment of error, Svoboda also argues that his statement to Adams was not properly admissible at trial and had little probative value. He argues on appeal to this court, as he did to the district court, that "hounding by law enforcement backed [him] into a corner" and that he chose to admit to the theft only "because he wanted his interaction with law enforcement to end." Brief for appellant at 15. However, Svoboda did not object at trial to the admission of Adams' statements about his confession, and thus he has not preserved any error for appellate review. In a criminal trial, after a pretrial hearing and order overruling a defendant's motion to suppress, the defendant, to preserve the issue on appeal, must object at trial to the admission of the evidence which was the subject of the suppression motion. *State v. Jones*, 293 Neb. 452, 878 N.W.2d 379 (2016). See *State v. Haltom*, 264 Neb. 976, 653 N.W.2d 232 (2002) (applying same rule to pretrial determinations about voluntariness of statements). Further, Svoboda does not assign error to the county court's ruling on the *Jackson v. Denno* issue or to the admission of Adams' testimony about Svoboda's statements. An alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error to be considered by an appellate court. *State v. Wood*, 310 Neb. 391, 966 N.W.2d 825 (2021). We decline to address this argument further.

### 3. Excessive Sentence

Svoboda asserts the district court erred by affirming the excessive sentence imposed by the county court. He was convicted of theft by unlawful taking, $500 or less, second offense, a Class I misdemeanor, which carries a possible penalty of imprisonment for up to 1 year, a fine of up to $1,000, or both. § 28-511; § 28-518(6); Neb. Rev. Stat. § 28-106 (Reissue 2016). The county court sentenced Svoboda to 365 days' incarceration, which is within statutory limits.

When imposing a sentence, a sentencing judge should consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense, and (8) the amount of violence involved in the commission of the crime. *State v. Blake*, 310 Neb. 769, 969 N.W.2d 399 (2022). The sentencing court is not limited to any mathematically applied set of factors, but the appropriateness of the sentence is necessarily a subjective judgment that includes the sentencing judge's observations of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life. *Id.*

In imposing the sentence, the county court considered the comments of counsel and of Svoboda, the facts of the case, a letter from Svoboda's spouse, and Svoboda's lengthy criminal history. The record shows that Svoboda has numerous prior convictions for both misdemeanor and felony theft crimes, as well as convictions for possession of a controlled substance and terroristic threats. The court also noted Svoboda's pending charges for burglary in another case. In finding Svoboda was not an appropriate candidate for probation and sentencing him to 365 days' incarceration, the court stated "that record of theft is far too long."

The district court observed that the sentence was within the statutory limits, and it found no abuse of discretion in the sentence imposed by the county court. The district court did not err in this regard.

### 4. Ineffective Assistance of Counsel

Svoboda asserts that the district court erred by failing to find that he received ineffective assistance of counsel in the county court because he was prejudiced by his trial counsel's deficient performance in various regards. As noted above, the record on appeal to this court does not include any statement of errors filed in Svoboda's appeal from the county court to the district court. However, Svoboda's framing of his claims of ineffective assistance in his assignments of error to this court are consistent with the district court's framing of the issues it considered. Specifically, the district court stated that Svoboda's allegations, "consolidated and restated," were that his trial counsel was ineffective in (1) failing to relay any facts or assert that Svoboda was not guilty during opening statements, (2) failing to question jurors regarding their potential exposure to the news media's coverage of Svoboda's arrest on an unrelated matter, (3) failing to move for a mistrial on the grounds that Svoboda was under the influence at the start of trial, (4) failing to ask the county court to order witnesses to remove their face masks while testifying, (5) failing to object to leading questions by the State and to answers that were speculative, (6) failing to request that corrections officers not be seated near Svoboda during the trial, and (7) stipulating to the validity of a prior offense without consulting Svoboda.

Svoboda was represented on appeal to the district court by different counsel than trial counsel. When a defendant's trial counsel is different from his or her counsel on direct appeal, the

defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record; otherwise, the ineffective assistance of trial counsel issue will be procedurally barred. *State v. Drake*, 311 Neb. 219, 971 N.W.2d 759 (2022). Once raised, an appellate court will determine whether the record on appeal is sufficient to review the merits of the ineffective performance claims. *Id.*

When a claim of ineffective assistance of counsel is raised in a direct appeal, the appellant is not required to allege prejudice; however, an appellant must make specific allegations of the conduct that he or she claims constitutes deficient performance by trial counsel. *State v. Figures*, 308 Neb. 801, 957 N.W.2d 161 (2021). General allegations that trial counsel performed deficiently or that trial counsel was ineffective are insufficient to raise an ineffective assistance claim on direct appeal. *State v. Weathers*, 304 Neb. 402, 935 N.W.2d 185 (2019). In order to know whether the record is insufficient to address assertions on direct appeal that trial counsel was ineffective, appellate counsel must assign and argue deficiency with enough particularity (1) for an appellate court to make a determination of whether the claim can be decided upon the trial record and (2) for a district court later reviewing a petition for postconviction relief to be able to recognize whether the claim was brought before the appellate court. *State v. Lierman*, 305 Neb. 289, 940 N.W.2d 529 (2020). An ineffective assistance of counsel claim made on direct appeal can be found to be without merit if the record establishes that trial counsel's performance was not deficient or that the appellant could not establish prejudice. *State v. Kipple*, 310 Neb. 654, 968 N.W.2d 613 (2022).

To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense. *State v. Blake*, 310 Neb. 769, 969 N.W.2d 399 (2022). To show that counsel's performance was deficient, a defendant must show that counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law. *State v. Wood*, 310 Neb. 391, 966 N.W.2d 825 (2021). To show prejudice in a claim of ineffective assistance of counsel, the defendant must demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different. *State v. Clausen*, 307 Neb. 968, 951 N.W.2d 764 (2020). A reasonable probability is a probability sufficient to undermine confidence in the outcome. *State v. Collins*, 307 Neb. 581, 950 N.W.2d 89 (2020).

(a) Opening Statement

Svoboda asserts that his trial counsel gave an opening statement that did not relay any facts or assert that Svoboda was not guilty. As he did before the district court, Svoboda argues that his attorney's opening statement was too short and that by not asking the jury to find him not guilty she implied that he was guilty. The district court first observed that there is no specific length required for opening statements and that the case was not so complicated it needed a lengthy introduction. The court found Svoboda's allegations conclusory and insufficiently pled. The court went on, however, to review the opening statement and found that it was not inconsistent with the conduct of a lawyer with ordinary training and skill. Finally, the court observed that the jury was instructed that counsels' arguments were not evidence and noted the "overwhelming evidence" presented to the jury of Svoboda's guilt. In light of this evidence, the court found no reasonable

probability that had Svoboda's trial counsel asked the jury to find him not guilty during her opening statement, the result of the trial would have been different. We agree that Svoboda has not shown either deficient performance or prejudice. The district court did not err in rejecting this claim.

### (b) Failure to Question Jurors

Svoboda asserts that his trial counsel did not ask jurors any relevant questions to support his motion for mistrial when given the opportunity to do so. The district court found the record sufficient to review this claim and determined that Svoboda had not shown either deficient performance or prejudice. The court observed that Svoboda had not indicated with any specificity what questions should have been asked of the jurors by his trial counsel. The court also noted that any attempt by trial counsel "to determine whether the jurors may have come across prejudicial information without realizing it while in recess or through family and friends" would have risked "introducing jurors to the prejudicial information they were charged with avoiding." The court also found that, given the sequence of questions asked of each juror by the trial court judge, Svoboda could not establish prejudice. The court observed, "The inquiries now demanded by [Svoboda] were answered when the [county] court asked if each juror had seen, heard, or read anything about [Svoboda]," eliminating the need for trial counsel to inquire further.

The entire analysis of a claim of ineffective assistance of counsel should be viewed with a strong presumption that counsel's actions were reasonable. *State v. Lowman*, 308 Neb. 482, 954 N.W.2d 905 (2021). Trial counsel is afforded due deference to formulate trial strategy and tactics, and an appellate court will not second-guess trial counsel's reasonable strategic tactics when reviewing claims of ineffective assistance of counsel. *Id.* Svoboda's trial counsel apparently made a reasonable strategic decision in declining to further question the jurors who responded negatively to the county court's inquiries about their exposure to any information about Svoboda, which decision we will not second-guess. Svoboda does not argue that any of the jurors other than the alternate were, in fact, exposed to such information, and he does not argue that any of the jurors failed to follow the county court's instructions. The district court did not err in rejecting this claim.

### (c) Waiver of Jury Sequestration

Svoboda asserts that his trial counsel failed to make an additional motion for mistrial after it was determined that Svoboda was under the influence at the start of trial and had waived rights while under the influence. The district court rejected this claim, stating that Svoboda's allegations were conclusory and did not show deficient performance. It also concluded that he was unable to show prejudice. We agree.

When a case is finally submitted to the jury, jury members must be kept together in some convenient place, under the charge of an officer, until they agree upon a verdict or are discharged by the court. *State v. Foster*, 286 Neb. 826, 839 N.W.2d 783 (2013). Here, the county court submitted the case to the jury at 4:25 p.m. on February 5, 2021, and the jury reached a verdict less than an hour later. The jury never separated during its deliberations, so regardless of whether Svoboda was under the influence of methamphetamine when he waived jury sequestration, he cannot show prejudice. See *State v. Barranco*, 278 Neb. 165, 769 N.W.2d 343 (2009) (jury actually reached guilty verdict same morning case was submitted, so it never separated and there was no

violation of statute governing separation of jury). The district court did not err in rejecting this claim.

### (d) Face Masks

Svoboda asserts that his trial counsel failed to ask the county court to order witnesses to remove their face masks while testifying. Prior to each witness's testimony, the county court instructed the witnesses that they could remove their masks if they felt comfortable, or keep the masks on if they did not. Oblender stated that he would keep his mask on. Neither Temple nor Adams stated at the start of their testimony their decisions with respect to masking, but the record shows that Temple was masked at least for a portion of her testimony as she referenced lowering her mask at one point. The district court found that Svoboda's allegations were vague and conclusory as he did not provide any facts to show that trial counsel's failure to request the court to order witnesses to remove their masks, or the use of masks, inhibited the jury's assessment of credibility. We agree that there were various other ways in which the jury could assess credibility of each witness, and Svoboda has not shown that they were prevented from doing so. The district court also determined that Svoboda could not show prejudice since the COVID-19 pandemic was ongoing in Lancaster County at the time of his trial. Svoboda acknowledged before the district court, as he does in his brief on appeal to this court, that "[throughout this ongoing pandemic, masks have rightly been a mainstay in [c]ounty [c]ourt." Brief for appellant at 22. The district court did not err in rejecting this claim.

### (e) Evidentiary Objections

Svoboda asserts that his trial counsel failed to make proper and timely objections when warranted, specifically objections that the State was leading a witness and that several answers were speculative. Although the district court examined one specific instance of a failure to object referenced in Svoboda's arguments before the district court, we find that this claim has not been preserved in accordance with *State v. Mrza*, 302 Neb. 931, 926 N.W.2d 79 (2019), in which the Nebraska Supreme Court held that assignments of error on direct appeal regarding ineffective assistance of trial counsel must specifically allege deficient performance, and an appellate court will not scour the remainder of the brief in search of such specificity. Svoboda's assignment of error lack's specificity as to which portions of testimony of which witnesses were objectionable. We decline to address this claim.

### (f) Corrections Staff Seating

Svoboda asserts that his trial counsel failed to request that corrections staff be moved from being seated near Svoboda during trial. The district court observed that Svoboda provided no facts to show why trial counsel's failure to request the officers be moved constituted deficient performance. Accordingly, the court found the claim conclusory and insufficiently pled. The court also determined that Svoboda was unable to show prejudice. We agree.

Although the record does not reveal the presence of the corrections officers or where they were seated, the record does show that on February 4, 2021, the county court had to postpone trial until the following day because Svoboda was not cooperating with jail staff, appeared intoxicated, and was on suicide observation. On that date, a deputy reported Svoboda's escalating behavior and

the likelihood that he would become verbal in the courtroom. The following day, the court spoke to Svoboda about his behavior the previous day and established that while Svoboda was still upset he was ready to proceed with trial.

Svoboda has not shown a reasonable probability that a motion to move the corrections officers would have been successful given his prior behavior and the fact that he was still upset about the proceedings. Additionally, we note, as did the district court that the county court instructed the jury to presume Svoboda was innocent until proven guilty beyond a reasonable doubt, limiting any prejudicial effect of the presence of any corrections officers. The district court did not err in rejecting this claim.

## (g) Stipulation to Prior Offense

Svoboda asserts that his trial counsel improperly stipulated to the validity of a prior offense before sentencing without consulting him, advising him on how to proceed, or getting permission from him first. The district court determined that Svoboda had failed to provide sufficient facts showing that his trial counsel's performance was deficient in this regard. Svoboda was charged with a second offense theft. The parties stipulated that the prior offense, which had been provided by the State, was valid for the purposes of enhancement. Svoboda was present for the dialogue on the stipulation, had an opportunity to disagree, and did not comment or raise any objection to the stipulation described to the county court. Likewise, he was present when both the State and the county court recited his prior criminal history. The prosecutor's comments noted that Svoboda had 11 theft convictions, five of which were felonies, including a conviction in Hall County. The county court's recitation of his prior criminal history specifically noted a conviction for theft by unlawful taking in Hall County (no year referenced) and a conviction for shoplifting in Hall County in 2007. Svoboda did not object that any of the convictions referenced during these recitations were not valid. He only spoke up after he was sentenced to state that he had not known about the stipulation.

The district court, citing *State v. Alvarado*, 27 Neb. App. 334, 931 N.W.2d 463 (2019), observed that defense counsel does not perform in a deficient manner simply by failing to make the State's job more difficult. Svoboda did not argue before the district court that the prior conviction used for enhancement was not valid. Nor does he make such an argument on appeal to this court. The district court did not err in rejecting this claim.

## VI. CONCLUSION

For the reasons stated above, we affirm the district court's order affirming Svoboda's conviction and sentence. We further find that Svoboda's claims regarding ineffective assistance of trial counsel either fail or were not sufficiently raised before the district court and are thus not preserved.

AFFIRMED.